laDALEY, Judge.
Defendant, Sunderland Marine Mutual Insurance Company Ltd., appeals the trial court’s grant of summary judgment in favor of plaintiff, Sea Trek, Inc., on the issue of insurance coverage. Because damages were stipulated to be $22,610.45, the trial court rendered judgment in favor of plaintiff for that amount. Plaintiff answered the appeal alleging the trial court erred in reforming the insurance contract and requesting an award of attorney’s fees for all trial court (federal and state) and appellate court work. We vacate the grant of summary judgment and remand for further proceedings.
Plaintiff owns a fishing boat, the F/V Bri-gette Ann. Plaintiff procured insurance from defendant effective April 25, 1994 which covers the “Hull and Máchinery” in the amount of $250,000.00 and “Protection and Indemnity” in the ^amount of $250,000.00. The printed form of the policy contains an “in-chmaree clause” which provides:
“This insurance also covers loss of or damage to the vessel named herein directly caused by:
Accidents in loading, discharging or handling cargo, or in bunkering;
Accidents in going on or off, or while on drydoeks, graving docks, ways, marine railways, gridirons or pontoons;
Breakdown of motor generators or other electrical machinery and electrical connections thereto, bursting of boilers, breakage of shafts, or any latent defect in the machinery or hull, (excluding the cost and expense of replacing or repairing the defective part);
Breakdown of or accidents to nuclear installations or reactors not on board the vessel named herein;
Contact with aircraft, rockets or similar missiles, or with any land conveyance;
*1110 Negligence of charterers and/or repairers, provided such charterers and/or repairers are not assured(s) hereunder; Negligence of master, mariners, engineers or pilots;”
The policy also includes Endorsement No. 1, Special Terms and Conditions, which lists 24 items. Only items 21 and 22 apply to the matter before us. Those Conditions provide:
21. MACHINERY DAMAGE CLAUSE: Warranted not liable for loss or damage to main engine and auxiliary machinery and appurtenances unless directly caused by stranding, sinking, fire of collision with another vessel, except to the propeller and propeller shaft.
22. ENGINE DAMAGE CLAUSE (RETRIEVAL OF NETS):
In the event of engine damage, breakdown or impairment of operation, it is understood and agreed that any subsequent damage or aggravation of existing damage caused by continued operation of the engine to retrieve fishing gear is specifically excluded.
LThe Brigette Ann suffered engine damage on July 4, 1994. In accordance with the policy, marine surveyors inspected the vessel and plaintiffs surveyor issued a report indicating that the engine suffered damage to its main bearings. Demand was made on defendant to pay the claim. Defendant refused alleging that Condition 21 of Endorsement 1 of the policy excluded coverage. Plaintiff filed this suit seeking to recover the repair costs of the vessel as well as costs and attorney’s fees for defendant’s arbitrary and capricious refusal to pay the claim. Motions for Summary Judgment were filed by both parties and, after hearing, the trial court granted the motion of plaintiff and denied the motion of defendant. In the trial court’s Reasons for Judgment the trial court found that the cause of the breakdown of the engine has been traced to a faulty fuel rack setting which allowed diluted fuel to get into the engine. Also, the court found that under the “Inchmaree” clauses, damages caused by “any latent defect in the machine or hull” were covered.
On appeal, defendant argues the endorsement controls over the printed form of the policy. Defendant contends the trial court erred in finding the policy was ambiguous and that the policy clearly excludes coverage. Alternatively, defendant argues the trial court erred in finding there was no genuine issue of material fact concerning whether a latent defect caused the engine damage. Defendant maintains that the judgment should be reversed and the case remanded for further proceedings.
Plaintiff answered the appeal and argues that although summary judgment was proper, the trial court erred in reforming the contract by replacing the word “of’ with “or” in Condition 21. Further, plaintiff maintains defendant was arbitrary and capricious in refusing to pay the claim and the trial court should have awarded costs Isand attorney’s fees. They also ask for an award of attorney’s fees for their work in federal district court[1] and on appeal.
In Reynolds v. Select Properties, Ltd., 634 So.2d 1180, 1182, 93-1480 La. 4/11/94, (La. 1994) the Louisiana Supreme Court, in reviewing the rules pertaining to the issue of insurance coverage on a motion for summary judgment, stated:
A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits submitted, if any, show there is no genuine issue of material fact such that the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966; Vermilion Corp. v. Vaughn, 397 So.2d 490, 493 (La. 1981). The burden is on the mover to establish that no material fact issues exist. Schroeder v. Board of Supervisors of La. State Univ., 591 So.2d 342, 345 (La.1991).
The trial court in Reasons for Judgment found:
“The cause of the breakdown of the engine has been traced to a faulty fuel rack set *1111 ting which allowed diluted fuel to get into the engine.
Under the “Inchmaree” clause in the policy, damages caused by “any latent defect in the machine or hull” is covered.”
The trial court apparently concluded that the faulty fuel rack setting which allowed diluted fuel to get into the engine was a latent defect and hence found coverage under the policy. In support of the motion for summary judgment, plaintiff submitted an affidavit and report from his marine surveyor. The report and affidavit addressed the cause of engine failure. The pertinent parts of the affidavit read as follows:
4. During the (tear down), no obvious cause of the engine damage was noted, although it was apparent that the No. 5 rod bearing had sustained a catastrophic failure;
5. The first cause he examined was inferi- or parts and he was able to rule out the IDF parts as a cause of the failure;
6. The mechanic advised that the rack setting was 6.8 mm and should have been 2.93 mm;
|67. The rack setting nut on the fuel pump is covered by a steel plate secured to the fuel pump with 2 bolts. This limits availability of adjustment by the crew to the fuel rack setting;
8. Mr. Latham had a sample of lube oil analyzed and the sample did not show any significant dilution of lube oil, but he does not consider the conclusive because the lube oil analysis also did not show any significant contamination, although there was obvious visual contamination such as metal shavings;
9. The damage to the bearing could not be explained by loss of lubrication, but eventually he was convinced that the fuel rack setting could have diluted the lube oil which would explain the cause of the damage to the bearing;
Plaintiffs argue that the marine surveyor affidavit establishes that the setting on the fuel rack was improper; that the setting nut was hidden creating a latent defect which caused the engine failure.
We must, for the purposes of the motion, assume the marine surveyor’s affidavit to be correct since there are no countervailing affidavits. However, the affidavit states that the failure of the cylinder rod was caused by fuel oil in the lubrication system; the fuel oil contamination of the lubrication system could have been caused by an improper setting of the fuel pump. The affidavit merely establishes possible cause of the oil dilution by fuel oil. The affidavit on its face does not establish that the engine failure was caused by a latent defect. Questions of fact remain at issue, therefore, the trial court erred in granting summary judgment in favor of the plaintiff.
Finally, plaintiff contends the trial court erred in “reforming” the contract by changing the wording of Condition 21. The trial court found a typographical error existed in the provision of the policy wherein it reads “... warranted not liable for loss ... to main engine ... unless directly caused by ... fire of collision with another vessel....” The trial court concluded the provision should read fire or collision. Plaintiff contends this is an improper reformation of the contract which removes any 1 Tambiguity. Defendant contends this is the obvious meaning of the policy provision and the judgment is correct.
Although we feel the resolution of this issue is not relevant to the final disposition of the case because this is not a fire or collision case, we agree with the defendant and the trial court. As outlined above, contractual provisions should be interpreted to give the provision effect. The phrase “Fire of collision” does not make the contract ambiguous, it simply does not make sense. “Fire or collision” makes sense and is the obvious meaning of the provision.
Having found that a question of fact exist as to whether or not a latent defect caused the engine failure, we vacate the trial court’s judgment, granting summary judgment and remand this matter for further proceedings. Plaintiff is assessed all costs of this appeal.
SUMMARY JUDGMENT VACATED. CASE REMANDED.

. Defendant removed this matter to federal court but the case was subsequently remanded to state court.