757 So.2d 805 (2000)
SEA TREK, INC.
v.
SUNDERLAND MARINE MUTUAL INSURANCE COMPANY, LTD.
Nos. 99-CA-893, 99-CA-894.
Court of Appeal of Louisiana, Fifth Circuit.
February 16, 2000.
*806 J. Francois Allain, New Orleans, Louisiana, Attorney for Appellant.
Rufus C. Harris, III, Alfred J. Rufty, III, New Orleans, Louisiana, Attorneys for Appellee.
Panel composed of Judges CHARLES GRISBAUM, JAMES L. CANNELLA and MARION F. EDWARDS.
EDWARDS, Judge.
Plaintiff/appellant Sea Trek Inc. appeals a summary judgment in favor of defendant/appellee Sunderland Marine Mutual Insurance Company (Sunderland). The trial court found that an endorsement specific to fishing vessels excluded coverage for the damages claimed by Sea Trek to the fishing boat F/V Brigette Ann. We affirm.
*807 The trial court's reasons for judgment set forth the history of the present case as follows:
Sea Trek purchased a policy of insurance, number BG0205, from [Sunderland] for its seventy-eight foot fishing vessel Brigette Ann. The paid policy was effective April 25, 1994 and provided coverage of Hull and Machinery at $250,000 and P & I at $250,000 in identical policies for both 1994-1995 and 1995-1996 policy terms.
The Hull and Machinery standard form contains an Inchmaree Clause which provides in pertinent part:
This insurance also covers loss or damage to the vessel named herein caused by ... Breakdown of motor generators or other electrical machinery and electrical connections thereto, bursting of boiler, breakage of shafts, or any latent defect in the machinery or hull (excluding the cost and expense of replacing or repairing the defective part); Negligence of master, mariners, engineers or pilots, provided such loss or damage has not resulted from want of due diligence by the assured, the owners or managers of the vessel, or any of them.
The following type-written Special Terms and Conditions appear in "Fishing Vessels Endorsement No.1":
CLAUSE 21. MACHINERY DAMAGE CLAUSE:

WARRANTED NOT LIABLE FOR LOSS OR DAMAGE TO MAIN ENGINE AND AUXILIARY MACHINERY AND APPURTENANCES UNLESS DIRECTLY CAUSED BY STANDING, SINKING, FIRE OF [sic] COLLISION WITH ANOTHER VESSEL, EXCEPT TO THE PROPELLER AND PROPELLER SHAFT.
CLAUSE 22. ENGINE DAMAGE CLAUSE (RETRIEVAL OF NETS): IN THE EVENT OF ENGINE DAMAGE, BREAKDOWN OR IMPAIRMENT OF OPERATION, IT IS UNDERSTOOD AND AGREED THAT ANY SUBSEQUENT DAMAGE OR AGGRAVATION OF EXISTING DAMAGE CAUSED BY CONTINUED OPERATION OF THE ENGINE TO RETRIEVE FISHING GEAR IS SPECIFICALLY EXCLUDED.
On July 4, 1994, the first of two engine failures occurred on the F/V Brigette Ann. On June 15, 1995, Sea Trek filed a Petition against Sunderland to recover costs of engine repairs and expenses associated with the July 4, 1994 accident under its policy of insurance. 24th J.D.C. No. 479-605. (After Sunderland removed this case to federal court, Judge Morey L. Sear, found no diversity jurisdiction and remanded this case back to the state court by order of July 24, 1995).
On August 25, 1995, Sunderland filed its first Motion for Summary Judgment contending that its policy of insurance as a matter of law does not provide coverage for Sea Trek's claim and that defendant did not act in an arbitrary and capricious manner in failing to pay petitioner's claim. On November 3, 1995, Sea Trek filed its Cross Motion for Summary Judgment contending that the exclusion clause 21 conflicts with the Inchmaree clause of the policy and also seeking the stipulated damage amount of $22,610.45 after subtracting the deductible. On November 28 1995, Judge pro tempore Frank V. Zaccaria, Sr. heard the motion, and on March 18, 1996 he granted Sea Trek's motion and awarded stipulated damages and costs and dismissed Sunderland's motion based on a finding that the policy was "vague and ambiguous [and] to be construed in the manner most favorable to an insured."
On December 11; 1996, the Fifth Circuit Court of Appeal vacated summary judgment for plaintiff and remanded the case for further proceedings:

*808 The trial court apparently concluded that the faulty fuel rack setting which allowed diluted fuel to get into the engine was a latent defect and hence found coverage under the policy
. . .
The [marine surveyor's] affidavit merely established possible cause of the oil dilution by fuel oil. The affidavit on its face does not establish that the engine failure was caused by a latent defect. Questions of fact remain and issue (sic), therefore, the trial court erred in granting summary judgment in favor of the plaintiff.[1]
On April 9, 1997, the court wrote counsel that it would consolidate case no. 479-605 with 24th J.D.C. case No. 492-408, a similar case between the same parties regarding the same insurance policy on the same vessel concerning a main engine failure but on a different date of October 19, 1995. Sea Trek filed the latter suit for engine repairs under the same policy against Sunderland on April 25, 1996. (The latter suit was remanded from federal court by order of June 19, 1996.) All pleadings from both counsel after April, 1997, bear a consolidated number, though the order for consolidation was not signed until July 14, 1998.
On October 16, 1997, Sunderland filed the instant Motion for Summary Judgment in the consolidated case seeking a dismissal of plaintiff's claims. It argues that the typewritten endorsement, viz. The machinery damage clause found at Endorsement No. 1, paragraph 1, clearly and unambiguously excludes damage to the Brigette Ann's main engine under the facts of this case on both occasions and that the endorsements control over the printed form of the policy.
In its July 7, 1998 opposition to defendant's motion, Sea Trek relies on (as yet unsigned) deposition testimony of Robert DiGirolamo that the policy is in three parts and all from forms in his office. After hearing the matter on July 8, 1998, the court took the matter under advisement.
The court then found that the parties intended to exclude coverage for main engine damage except in certain instances, and as a matter of law the endorsement controls over the Inchmaree clause. Further, the court found that Sea Trek had not alleged a factual circumstance in either engine failure where there would be coverage, since there was no claim for damages as a result of stranding, sinking, fire or collision. The court granted judgment in favor of Sunderland and subsequently denied Sea Trek's Motion for New Trial.
On appeal, Sea Trek contends that our previous opinion did not reverse the trial court's finding that Clause 21, when read together with Clause 22 is ambiguous and thus that finding of ambiguity became the "law of the case." Sea Trek also argues that the court erred in denying a new trial, apparently contending either that the deposition of Mr. DiGirolamo, signed subsequent to the judgment, constituted new evidence and/or that the court failed to consider that unsigned deposition in its original judgment. Sea Trek finally contends that the policy is ambiguous and that there is coverage under the Inchmaree Clause.
In our original opinion we vacated the first summary judgment because there was a question of material fact as to whether or not a latent defect caused the engine failure. We held that although the trial court apparently concluded a latent defect existed in the first engine failure, the affidavit of Mr. LaBure merely established a possible cause. We did not address the exclusionary clauses except to find that the phrase "fire of collision" in Clause 21 was not ambiguous, but obviously a typographical error with the obvious meaning "fire or collision".
*809 Sea Trek's contention that the finding of the trial court in the first appeal remains the law of the case is without merit. The summary judgment was vacated in its entirety. The finding of ambiguity was made in the trial court's reasons for judgment.
It must be noted that a "trial court's written reasons, while defining and elucidating the principles upon which he is deciding a case, form no part of the official judgment he signs and from which appeals are taken."[2]
We consider only the actual judgment as the ruling of the court.[3]
The law of the case principle relates to (a) the binding force of trial court rulings during later stages of the trial, (b) the conclusive effects of appellate rulings at the trial on remand, and (c) the rule that an appellate court will ordinarily not reconsider its own rulings of law on a subsequent appeal in the same case. ...., the law of the case principle is applied merely as a discretionary guide: Argument is barred where there is merely doubt as to the correctness of the former ruling, but not in cases of palpable former error or so mechanically as to accomplish manifest injustice.[4]
The ambiguity of Clause 21 when read with Clause 22 was not a "ruling" of either the trial or the appellate court. The "law of the case" principle is thus inapplicable here.
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate.[5] An appellate court must ask the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is a genuine issue of material fact remaining to be decided, and whether the appellant is entitled to judgment as a matter of law.[6] The appellate court must consider whether the summary judgment is appropriate under the circumstances of the case. There must be a "genuine" or "triable" issue on which reasonable persons could disagree.[7]
On review of the record in the present appeal, we find that in both petitions Sea Trek alleged that the engine of the Brigette Ann abruptly sustained damage to certain main bearings, partially destroying the vessel's engine. An affidavit submitted by the marine surveyor retained by Sea Trek, Mr. Chris LaBure, concluded that in the first incident, an improper fuel rack setting could explain the cause of the damage. In a deposition submitted by Sunderland, LaBure repeated this finding and stated that dilution of lube oil was the ultimate cause of the breakdown. Mr. James Lathem, a marine surveyor employed on behalf of Sunderland, testified via deposition that he agreed with that finding. LaBure then stated in a field survey as well as by deposition that the second breakdown was due to lack of sufficient quantity of lube oil in the engine and was due to crew negligence. Latham made no conclusions as to the second incident.
There is no allegation nor any evidence that either incident occurred as a result of stranding, sinking fire or collision with another vessel.

*810 Words and phrases used in a policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Where the language in the policy is clear, unambiguous, and expressive of the intent of the parties, the agreement must be enforced as written. However, if after applying the other rules of construction an ambiguity remains, the ambiguous provision is to be construed against the drafter and in favor of the insured.
The purpose of liability insurance is to afford the insured protection from damage claims. Policies therefore should be construed to effect, and not to deny, coverage. Thus, a provision which seeks to narrow the insurer's obligation is strictly construed against the insurer, and, if the language of the exclusion is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied.
It is equally well settled, however, that subject to the above rules of interpretation, insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy. As this court stated in Commercial Union Insurance Co. v. Advance Coating Co., 351 So.2d 1183, 1185 (La.1977), quoting Muse v. Metropolitan Life Insurance Co., 193 La. 605, 192 So. 72 (1939):
The rule of strict construction does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists, nor does it authorize the court to make a new contract for the parties or disregard the evidence as expressed, or to refine away terms of a contract expressed with sufficient clearness to convey the plain meaning of the parties....[8]
An insurer may change or amend coverage by an endorsement attached to the policy.[9] Where an attachment to the policy conflicts with the terms of the policy, the attachment will control.[10] If coverage is provided in the policy, but then excluded in the attachment to the policy, coverage will be excluded.[11]
Our review of the policy discloses no ambiguity with the endorsements. The main policy generally covers losses sustained to the hull, tackle, engine, equipment, etc. of the vessel, as well as protection and indemnity against crew injury. Such coverage can apply to different types of watercrafts. The endorsements are "special terms and conditions" amending the general coverage and are applicable to fishing vessels. Clause 21 specifically excludes damage to an engine unless directly caused by sinking, stranding, fire, or collision with another vessel, none of which conditions apply in the present matter. Coverage to the engine is thus limited in a fishing vessel. Clause 22 does not render the preceding paragraph ambiguous but merely expands the exclusion to deny coverage for further damage inflicted on the engine after the initial impairment by continued operation to retrieve fishing gear. Both clauses are very explicit and specific, are plainly worded and lead to no absurd consequences. The clear interpretation to which the exclusions are subject is the one applied by the trial court and *811 which we apply here, that coverage for the engine damage in the present case is excluded.
The cases cited by Sea Trek for the proposition that policies cannot give coverage for specific perils and then take away that coverage by an exclusion are inapplicable, as each of those contracts involved ambiguities not present in the policy before us. In addition, Sea Trek urges that the exclusions are prohibited as against public policy because "public policy requires that the policy be interpreted as written" and the policy is complicated, full of archaic language. While it is true that the contract is long and occasionally contains ancient terms, we do not find such facts violate public policy. We note that affidavits submitted by Sunderland show that Mr. Jerry Marcello, the agent who procured the insurance, read and explained thoroughly the type of insurance offered, urging that Sea Trek's president, Mr. Hunter Bienvenu, read the terms and conditions of the contract. Mr. Bienvenu, an attorney, initialed his acceptance of the terms, conditions, and exclusions and was given the opportunity to obtain additional coverage. A copy of the policy in the record indicates that Mr. Bienvenu initialed each page of the endorsements. Mr. Bienvenu's affidavit indicates that he was not given the opportunity to negotiate terms of the policy, and accepted it primarily for its personal injury protection. He believed that the Hull and Machinery portion covered any damage to the vessel's machinery although there is no indication that he did not understand the "archaic" language. We do not find that these affidavits disclose an issue of material fact so as to preclude summary judgment.
When a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and summary judgment is appropriate.[12] Because this court finds the pollution exclusion facially unambiguous, the decision of the trial court must be affirmed. Having reviewed the summary judgment de novo and have considered Mr. DiGerolamo's deposition in our findings, we need not determine the issue of the trial court's use of that deposition.
For the foregoing reasons, summary judgment in favor of Sunderland is affirmed. Sea Trek is assessed all costs of this appeal.
AFFIRMED.
NOTES
[1] Sea Trek, Inc. v. Sunderland Marine Mut. Ins. Co., 96-458, (La.App. 5th Cir. 12/11/96), 684 So.2d 1109, 1111; writ denied 97-C-0389, (La.3/21/97), 691 So.2d 95.
[2] Western World Ins. Co., Inc. v. Paradise Pools & Spas, Inc., 633 So.2d 790, 792 (La. App. 5th Cir.1994), citing LSA-C.C.P. art. 1917, 1918; First Progenitor, L.L.C. v. Lake Financial Services, Inc., 95-251 (La.App. 5th Cir. 9/26/95), 662 So.2d 507, 509.
[3] Bustamente v. Vezina, 95-556 (La.App. 5th Cir. 1/30/96), 668 So.2d 1286, 1291.
[4] Ficarra v. Mount Vernon Fire Ins. Co. (La. App. 5th Cir.1988), 527 So.2d 493, 494.
[5] Azreme, Corp. v. Esquire Title Corp., 98-1179 (La.App. 5th Cir. 3/30/99), 731 So.2d 422, 425.
[6] Id., at p. 425; Tassin v. City of Westwego, 95-307 (La.App. 5th Cir. 12/13/95), 665 So.2d 1272.
[7] Id., at p. 425.
[8] Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180 (some citations omitted).
[9] Bailsco Blades & Casting Inc. v. Fireman's Fund Ins. Co., 31,876 (La.App. 2nd Cir. 5/5/99), 737 So.2d 164, 166. See also Dekeyser v. Automotive Cas. Ins. Co., 97-1251 (La. App. 4th Cir. 2/04/98), 706 So.2d 676, 681.
[10] Bailsco, supra, at p. 166.
[11] Bailsco, supra at. p. 166.
[12] Ducote v. Koch Pipeline Co., L.P., 98-C-0942, (La.1/20/99) 730 So.2d 432; Brown v. Drillers, Inc., 93-1019 (La.1/14/94); 630 So.2d 741.