FREDERICKA HOMBERG WICKER, Judge.
 

 12Plaintiffs/appellants Zoe Aldige’ and Chicago Property Interests, L.L.C., representing that they are proceeding in their personal and representative capacity, appeal the grant of summary judgment as to defendant/appellee National Union Fire Insurance Company (“National Union”). For the foregoing reasons, we affirm.
 

 This lawsuit and appeal arise out of Hurricane Katrina’s passage over Louisiana in August 2005. On August 28, 2005, as Katrina was nearing the Louisiana coast, Jefferson Parish President Aaron Broussard ordered approximately 226 water pump operators to evacuate Jefferson Parish for Washington Parish and other locations throughout Louisiana. When the pump operators left their stations, the pumps were turned off. On August 29, Katrina made landfall in Plaquemines Parish, and caused major flooding to both the east and west banks of Jefferson Parish.
 

 laOn October 14, 2005, plaintiffs Zoe Al-dige’ and Chicago Property Interests, L.L.C. filed a petition for damages naming Jefferson Parish and Aaron Broussard as defendants. The plaintiffs alleged that Jefferson Parish’s failure to operate the pumps for some twelve hours during Katrina’s passage over Louisiana was the principal cause of the flooding in the parish and that Parish President Broussard violated Jefferson Parish policy by forcing the pump operators to leave their stations. The plaintiffs also alleged that the damage
 
 *45
 
 would not have occurred had Broussard not made the decision to evacuate the pump operators. In addition, the plaintiffs sought to define a putative class of plaintiffs as all Jefferson Parish east bank residents whose property was flooded as a result of the non-operation of the drainage pumps during or following the passage of Hurricane Katrina. This lawsuit was eventually consolidated with six additional suits alleging that the plaintiffs’ property in Jefferson Parish had flooded during and following Hurricane Katrina due the actions of Jefferson Parish and Aaron Brous-sard. The other six consolidated matters were filed on October 25, 2005 (plaintiff Levy), November 4, 2005 (plaintiff Loga), December 1, 2005 (plaintiff Schmidt), December 16, 2005 (plaintiff Kaczmarek), August 28, 2006 (plaintiffs Brown and Cason), and August 29, 2006 (plaintiff Manard).
 

 On June 29, 2007, the plaintiffs filed a Class Action Administrative Master Petition for Damages (the “Class Action Petition”). The Class Action Petition named as putative plaintiffs “[a]ll parties and/or entities residing or owning property in the Parish of Jefferson, State of Louisiana, who may have sustained injuries, losses, and/or damages as a result of the August 2005 flooding caused and/or contributed to by the non-operation of the pumping and drainage systems during and/or following Hurricane Katrina.” The plaintiffs again alleged that President Broussard acted in a negligent manner and that the parish’s failure to |4operate the pumps was the principal cause of the flooding in Jefferson Parish. In the Class Action Petition, the plaintiffs sought recovery for fourteen categories of damages. These included damages for contamination of property, loss of use of property, increased living expenses, displacement costs, diminution of property value, ecological damages, loss of income, lost profits, lost business opportunity, inconvenience, mental anguish, emotional distress, bodily harm, and past and future medical expenses. The plaintiffs also added several defendants to each of the consolidated matters, including National Union Fire Insurance Company of Pittsburgh, Pa. (“National Union”), an insurer of Jefferson Parish
 

 National Union had issued a “Public Officials and Employees Liability Insurance Policy” in which the named insured was Jefferson Parish and the policy period was from November 24, 2004 to November 24, 2005 (the “National Union policy”). The National Union policy obligated National Union to:
 

 [P]ay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages from any claim or claims first made against the Insured and reported in writing to the Company during the Policy Period for any Wrongful Act of the Insured or of any other person for whose actions the Insured is legally responsible, but only if such Wrongful Act occurs during or pri- or to the Policy Period and solely in performing or failing to perform duties of the Public Entity.
 

 However, these terms were modified by “Endorsement # 2” to the National Union policy, which required National Union to:
 

 [P]ay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as Damages resulting from any Claim first made against the Insured during the Policy Period or the Discovery Period (if applicable) and reported to the Company pursuant to the terms of this policy for any Wrongful Act of the Insured in the performance of duties for the Public Entity.
 

 Endorsement # 2 also contained a lengthy list of exclusions. “Exclusion (d)” to Endorsement # 2 states:
 

 
 *46
 
 This policy does not apply to any Damages or Claim ... (d) Arising Out Of (1) bodily injury to, or sickness, disease, emotional distress or death of any | r,person, (2) damage to or destruction of any property, including the loss of use thereof, (3) any allegation relating to the foregoing exclusions (d)(1) through (d)(2) that an insured negligently based on an alleged practice, custom, or policy and including, without limitation, any allegation that the violation of a civil right caused or resulted from such Damages or Claim
 

 The term “Arising Out Of’ is defined in Endorsement # 2 . as “originating from, having its origin in, growing out of, flowing from, incident to or having a connection with, whether directly or indirectly.” Thus, Endorsement #2 legally obligated National Union to pay “Damages” resulting from any “Claim” for “Wrongful Acts” made against the insured but Exclusion (d) specifically excluded “Claims” and “Damages” that “Arise Out Of’ bodily injury, property damage, and loss of use thereof.
 

 On October 26, 2007, National Union filed a Consolidated Motion for Summary Judgment alleging that the plaintiffs’ claims against it were specifically excluded by Endorsement #2 and Exclusion (d) and that the National Union policy did not provide Jefferson Parish with coverage as a matter of law. Hearing on the motion was set for January 11, 2008. Following a hearing on the motion, the trial court issued a judgment granting National Union’s motion for summary judgment. This timely appeal followed.
 

 The plaintiffs assign three assignments of error to the proceedings below. First, the plaintiffs argue that the trial court erred in finding that the Exclusion (d) provided no coverage for their injuries. Second, they allege that the trial court erred in not construing the National Union policy as a “liability” policy. Third, the plaintiffs argue that the trial court erred in finding Exclusion (d) valid and applying it to excluding their claims.
 

 Appellate courts review summary judgments
 
 de novo
 
 under the same criteria governing the trial court’s consideration of whether summary judgment is appropriate.
 
 See, e.g., Prince v. K-Mart Corporation,
 
 01-1151 (La.App. 5 Cir. 3/26/02), 815 So.2d 245, 248. Summary judgments are currently favored in the law and the rules should therefore be liberally applied.
 
 Carr v. Wal-Mart Stores, Inc.,
 
 00-896 (La.App. 5 Cir. 10/31/00), 772 So.2d 865, 866,
 
 writ denied,
 
 00-3247 (La.1/26/01), 782 So.2d 636. It is well settled that a motion for summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file show there is no genuine issue of material fact such that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966;
 
 Ekere v. Dupont Chemical Plant,
 
 99-1027 (La.App. 5 Cir. 2/16/00), 757 So.2d 33, 34,
 
 writ denied,
 
 00-778 (La.4/28/00), 760 So.2d 1181. Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy under which coverage could be afforded.
 
 Reynolds v. Select Properties, Ltd.,
 
 93-1480 (La.4/11/94), 634 So.2d 1180, 1183.
 

 FIRST ASSIGNMENT OF ERROR
 

 In their first assignment of error, the plaintiffs aver that the trial court erred in finding that Exclusion (d) excluded their alleged injuries from coverage. The plaintiffs argue that they are seeking recovery for several categories of damages not covered by Exclusion (d), including increased living expenses, extended displacement costs, loss of income, lost profits, lost business opportunities, and inconvenience. We disagree.
 

 
 *47
 
 It is manifest in Louisiana law that an insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code.
 
 Hebert v. Webre,
 
 2008-0060 (La.5/21/08), 982 So.2d 770, 773. Words and phrases used in an insurance policy are to be construed using their plain, ordinary, and generally prevailing meaning, unless the words have acquired a technical meaning.
 
 Mayo v. State Farm Mutual Automobile Insurance Company,
 
 03-1801 (La.2/25/04), 869 So.2d 96, 99. When the words of an insurance contract are clear and explicit and lead to no absurd consequences, courts must enforce the contract as written.
 
 Succession of Fannaly v. Lafayette Insurance Co.,
 
 01-1355 (La.1/15/02), 805 So.2d 1134, 1137. However, if the insurance policy is susceptible to two or more reasonable interpretations, then it is considered ambiguous and must be liberally construed in favor of coverage.
 
 Vintage Contracting, L.L.C. v. Dixie Building Material Company, Inc.,
 
 03-422 (La.App. 5 Cir. 9/16/03), 858 So.2d 22, 26. An insurer seeking to avoid coverage through summary judgment must prove that some exclusion applies to preclude coverage.
 
 Smith v. Reliance Insurance Co. of Illinois,
 
 01-888 (La.App. 5 Cir. 1/15/02), 807 So.2d 1010, 1014.
 

 By the terms of Endorsement # 2, “Damages” was defined as a “monetary judgment or settlement agreed to with the consent of the company,” a “Wrongful Act” was defined as “any actual or alleged error or misstatement or misleading statement or act or omission or neglect or breach of duty, including misfeasance, malfeasance, and nonfeasance,” and a “Claim” was defined as a “judicial proceeding alleging a Wrongful Act that is filed ... and which seeks Damages.” Therefore, any damage originating from, having its origin in, growing out of, flowing from, incident to or having a connection with property damage, loss of use of property, or bodily harm is expressly excluded from the National Union policy.
 

 A comprehensive review of the original, supplemental and Class Action Petitions reveals that every category of damages the plaintiffs allege directly or indirectly had its origin in the passage of Hurricane Katrina and the subsequent property damage and bodily harm allegedly suffered by the plaintiffs. This is particularly true given the broad scope of the term “Arising Out Of’ as defined in Exclusion (d). For example, if a putative plaintiff suffered increased living ^expenses or displacement costs, it was because his or her property was directly or indirectly damaged in the flood that followed Hurricane Katrina. We find that the plain, ordinary interpretation of the definition of “Arising Out Of’ and Exclusion (d) is sufficient to exclude all of the plaintiffs’ alleged categories of damages. Consequently, this assignment of error has no merit.
 

 SECOND ASSIGNMENT OF ERROR
 

 In their second assignment of error, the plaintiffs allege that the trial court erred in not construing the National Union policy as a “liability” policy. Specifically, the plaintiffs claim that the National Union policy was a “general liability” policy which contemplated that National Union would defend suits under a general negligence “wrongful act” standard. In addition, the plaintiffs argue that Exclusion (d) of the National Union policy is so “blatantly universal” so as to be “directly contrary” to the
 
 original
 
 policy coverage statement.
 

 As the plaintiffs note, the caption of án insurance policy is pertinent in determining the nature of the policy.
 
 See, e.g., Quinlan v. Liberty Bank and Trust Co.,
 
 575 So.2d 336, 338 (La.1990). However,
 
 *48
 
 the character of a document, including a contract of insurance, is determined by examining the entire document and not merely the document’s title.
 
 See, e.g., Vogt v. Vogt,
 
 02-0066 (La.App. 5 Cir. 10/29/02), 831 So.2d 428, 432 (quoting
 
 Smith v. McKeller,
 
 93-1944 (La.App. 1 Cir. 6/24/94), 638 So.2d 1192).
 

 In legal parlance, the term “liability insurance” is used in a broad and narrow sense.
 
 See, e.g., Quinlan,
 
 575 So.2d at 348 (on rehearing). When the term is used in a broad sense, it includes contracts of indemnity against loss and contracts of insurance against liability.
 
 Id.
 
 In the narrow sense, “liability insurance” refers to contracts of insurance against liability as opposed to contracts of indemnity against loss.
 
 See Meloy v. Conoco, Inc.,
 
 504 So.2d 833, 839 (La.1987). Under a contract |9of insurance against liability, the insurer must make payment once the insured is found liable for any loss, that is, even if the insured has not paid.
 
 Quinlan,
 
 575 So.2d at 348 (on rehearing). Under a contract of indemnity against loss, the insurer must indemnify the insured only after the insured has suffered actual loss, meaning that after the insured has paid or been compelled to pay, his action lies against the insurer by way of indemnity.
 
 Id.
 
 If the policy is one of insurance against liability, coverage attaches when liability attaches, however, if the policy is one of indemnity against loss, coverage attaches only when the insured suffers an actual loss and defense costs are paid.
 
 See, e.g., Meloy,
 
 504 So.2d at 839. Thus, an insurer’s duty to defend an insured in a contract of insurance against liability arises when the pleadings against the insured disclose a possibility of liability under the policy.
 
 Id.
 
 No such duty exists in a contract of indemnity against loss.
 
 Id.
 

 A thorough reading of the National Union policy leads us to conclude that the policy is an indemnity policy rather than a liability policy. As aforementioned, Endorsement #2 of the National Union policy obligated National Union to pay “on behalf of the Insured all sums which the Insured shall become legally obligated to pay as Damages resulting from any Claim.” “Damages” was defined in Endorsement #2 as a “monetary judgment or settlement agreed to with the consent of the company” and a “Claim” was defined as a “judicial proceeding alleging a Wrongful Act that is filed ... and which seeks Damages.” Therefore, to be liable under its policy, National Union must pay a monetary judgment or settlement resulting from a judicial proceeding alleging a wrongful act. Put differently, National Union can be liable under the policy only
 
 after
 
 the insured suffers an actual loss and defense costs have been paid, which is a hallmark of an indemnity policy.
 
 Meloy,
 
 504 So.2d at 839. This Court is also cognizant of the fact that
 
 Black’s Law Dictionary
 
 defines a “comprehensive general liability policy” | lflas an “insurance policy ... that covers damages that the insured becomes legally obligated to pay to a third party because of bodily injury or property damage.” Black’s Law DictionaRY 809 (7th ed.1999). As discussed above, Exclusion (d) by its own terms does not obligate National Union to pay a third party for bodily injury or property damage. Thus, coverage has not yet attached under the National Union policy, and there is no duty on the part of National Union to defend third party claims under a general negligence standard.
 

 In the instant case, the National Union policy contained a general obligation which was modified by Endorsement #2. An insurer may change or amend coverage by an endorsement attached to the policy.
 
 Sea Trek, Inc. v. Sunderland Marine Mut. Ins. Co., Ltd.,
 
 
 *49
 
 99-893, p. 8 (La.App. 5 Cir.2000), 757 So.2d 805, 810. If an attachment to the policy conflicts with the terms of the policy, the attachment will control.
 
 Id.
 
 If coverage is provided for in the policy, but then excluded in the attachment to the policy, coverage will be excluded.
 
 Id.
 

 Thus, Endorsement #2 and by extension Exclusion (d) controls, rather than the original policy coverage statement referred to by the plaintiffs. The plaintiffs’ assertion that Exclusion (d) eliminates all coverage afforded under the National Union policy and thereby creates a patently absurd result is likewise without merit. Rather, Exclusion (d) excludes coverage for certain “Damages” or “Claims,” including those that “Arise Out Of’ bodily injury or property damage.
 

 The Plaintiffs also allege in this assignment of error that Exclusion (d) of the National Union policy essentially “excludes all people and all things from any coverage whatsoever.” This Court is not unmindful of the fact that the National Union policy provides coverage for a seemingly minute variety of “Wrongful Acts” by public officials. In fact, we have searched the jurisprudence from across the United States for similar policies and have found only one instance where a |n court held that a similar policy may provide coverage to a public officer or entity. In a sublime stroke of irony, it was this very Court that held so in
 
 Clulee v. Bayou Fleet, Inc.,
 
 04-CA-106 c/w 04-CA-107 (La.App. 5 Cir. 5/26/04), 875 So.2d 878. In
 
 Clulee,
 
 this Court held that summary judgment was inappropriate where the plaintiffs argued that parish officials were negligently enforcing zoning laws with respect to a sand pit and alleged coverage under a “Public Officials and Employees Liability Policy.” We note that a cogent and powerful argument can be made that any damage the
 
 Clulee
 
 plaintiffs suffered “arose out of’ property damage or loss of use of said property.
 
 [1]
 
 With regard to the National Union policy, one category of damages which would arguably not be excluded would be purely economic damages. For example, were the plaintiffs to allege that the parish president arbitrarily and capriciously failed to reopen the parish after public services had been restored, the plaintiffs could argue that they suffered a loss of business opportunity, assuming that they suffered no property damage.
 

 In any event, Jefferson Parish officials are free to provide themselves with whatever insurance coverage they see fit. They chose the National Union policy. Accordingly, this assignment of error has no merit.
 

 THIRD ASSIGNMENT OF ERROR
 

 In their third assignment of error, the plaintiffs allege that the trial court erred in finding Exclusion (d) valid and applying it to excluding their claims. Specifically, the plaintiffs argue that the application of Exclusion (d) creates an inherent ambiguity in the National Union policy because it directly conflicts with the general policy provisions of Endorsement # 2. Thus, the argument follows, the ambiguity must be resolved in favor of the plaintiffs.
 

 | iaAn insurance policy should not be interpreted in a strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion.
 
 See, e.g., Cugini, Ltd. v. Argonaut Great Cent. Ins. Co.,
 
 04-795 (La.App. 5 Cir. 11/30/04), 889 So.2d 1104, 1112. Ab
 
 *50
 
 sent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume.
 
 Chesser v. Royal & Sunalliance Ins. Co.,
 
 05-678 (La.App. 5 Cir.2006), 926 So.2d 612, 615. However, any ambiguity in insurance policy provisions must be narrowly construed to afford coverage in favor of the insured.
 
 Gottsegen v. Hart Property Management, Inc.,
 
 02-129 (La.App. 5 Cir. 5/29/02), 820 So.2d 1138, 1141. The determination of whether a contract is clear or ambiguous is a question of law.
 
 Mayo,
 
 869 So.2d at 100.
 

 As we discussed above, the National Union policy’s general obligation, was modified by Endorsement # 2, which was in turn narrowed by Exclusion (d). Thus, the terms of Exclusion (d) control where they conflict with Endorsement # 2.
 
 See,
 
 e.g.,
 
 Sea Trek,
 
 757 So.2d at 810. The National Union policy clearly denominates Endorsement #2 as general and Exclusion (d) as specific. The intent of the parties to the National Union policy to establish specific exclusions to general coverage is plain beyond doubt.
 
 See, e.g.,
 
 La. C.C. arts. 2045, 2046. In addition, the Civil Code contemplates that a contract of general scope may include provisions pertinent to specific situations. La. C.C. art. 2052. Accordingly, this assignment of error is without merit.
 

 | ^CONCLUSION
 

 For the foregoing reasons, the trial court’s grant of summary judgment as to National Union is affirmed. Costs to be paid by appellant.
 

 AFFIRMED.
 

 [1]
 

 . The “Public Officials and Employees Liability Policy” in
 
 Clulee
 
 only excluded coverage for "intentional acts.”