# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 17-30311

————

United States Court of Appeals
Fifth Circuit

**FILED**

May 18, 2018

Lyle W. Cayce
Clerk

VERONICA BENNETT,

> Plaintiff - Appellee

v.

HARTFORD INSURANCE COMPANY OF THE MIDWEST,

> Defendant - Appellant

v.

AXIS SURPLUS INSURANCE COMPANY,

> Defendant - Appellee

and

STATE OF LOUISIANA THROUGH DIVISION OF ADMINISTRATION, OFFICE OF RISK MANAGEMENT,

> Intervenor - Appellee

**********************************************

TERRON WHITE; GLORIA WHITE,

> Plaintiff - Appellee

v.

HARTFORD INSURANCE COMPANY OF THE MIDWEST,

> Defendant - Appellant

No. 17-30311

and

STATE OF LOUISIANA THROUGH DIVISION OF ADMINISTRATION, OFFICE OF RISK MANAGEMENT,

   Intervenor - Appellee

—————————

Appeal from the United States District Court
for the Middle District of Louisiana

—————————

Before STEWART, Chief Judge, and HAYNES and WILLETT, Circuit Judges.

CARL E. STEWART, Chief Judge:

Defendant-Appellant Hartford Insurance Company of the Midwest ("Hartford") appeals the district court's order denying its motion for summary judgment and granting that of Defendant-Appellee Axis Surplus Insurance Company ("Axis"). Hartford also challenges the district court's grant of Axis's motion to strike an affidavit submitted in support of its motion for summary judgment as untimely. For the reasons that follow, we AFFIRM.

## BACKGROUND

On October 17, 2012, Plaintiffs-Appellees Terron White and Veronica Bennett were rear-ended by a truck operated by James Lee while traveling southbound on Louisiana Highway 61 in East Baton Rouge Parish.[1] At the time of the accident, Lee was operating a truck in the course and scope of his employment with Suttles Truck Leasing, Inc. ("Suttles") and Dana Transport,

---

[1] White and Bennett are employees of the State of Louisiana and were in the course and scope of their employment at the time of the accident. The State of Louisiana later intervened in this lawsuit to exercise its subrogation rights to recover medical expenses paid to Bennett and White under the Louisiana Workers' Compensation Act, LA. REV. STAT. ANN. § 23:1020, et seq. Bennett, White, and the State of Louisiana are not parties to this appeal.

LLC ("Dana Transport"). Bennett and the Whites[2] separately sued Lee, Suttles, Dana Transport, and others for injuries and damages they sustained as a result of the accident. They also sued various insurance companies, including Great West Casualty Insurance Company ("Great West"), American Guarantee and Liability Insurance Company ("AGLIC"), Hartford, and Axis under Louisiana's Direct Action Statute, LA. REV. STAT. ANN. § 22:655, as the alleged primary and excess liability insurers.[3] The lawsuits, which were initially filed in Louisiana state court, were removed to federal court and subsequently consolidated.

Over the course of this litigation, it became apparent that Great West was liable as a primary liability insurer, and Axis and AGLIC were liable as excess liability insurers. Although Hartford issued a primary automobile liability policy that was effective at the time of the accident, it has disputed whether the terms of its policy provide coverage in this case. The Hartford policy identifies eighteen (18) named insureds, including Suttles and Dana Transport. The Insuring Agreement states Hartford's obligation to "pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which [the policy] applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" The policy provides for $2,000,000 in underlying liability coverage. Section I of the Business Auto Coverage Form identifies "Item Two of the Declarations Page" as specifying "the 'autos' that are covered 'autos' for each of the insured's coverages." In turn, "Item Two - Schedule of Coverages and Covered Autos" ("Item Two") defines the scope of coverage as follows:

---

[2] Gloria White joined her husband Terron White's lawsuit as a plaintiff, seeking damages for loss of consortium due to his injuries.

[3] Hartford was not added to the lawsuit until Bennett and the Whites were informed by counsel for Axis that there may be another primary insurance policy whose liability limits would be triggered and exhausted before that of Axis.

No. 17-30311

"This policy provides only those coverages where a charge is shown in the advance premium column . . . Each of these coverages will apply only to those 'autos' shown as covered 'autos.' 'Autos' are shown as covered 'autos' for a particular coverage by the entry of one or more symbols from the COVERED AUTO Section of the Business Auto Coverage Form next to the name of the coverage."

The Business Auto Coverage Form includes a table defining the various designated auto symbols, with relevant descriptions providing as follows:

| Symbol | Description of Covered Auto Designation Symbols |
|:------:|-------------------------------------------------|
| 1 | Any "Auto" |
| 2 | Owned "Autos" Only: Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| 7 | Specifically Described Autos: Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three).[4] |

Importantly, Item Two of the Hartford policy lists the symbol "01" as describing which autos are afforded liability coverage under the policy; under the "Description Of Covered Auto Designation Symbols" portion of the Business Auto Coverage Form, the symbol "01" represents "any 'auto.'" A charge of $92,954 is shown in the advance premium column providing liability coverage for all autos. Thus, the Hartford policy defines "covered auto," for purposes of liability coverage, as "any 'auto'" without further qualification or limitation.[5]

---

[4] Item Three of the Declarations does not list a schedule of covered autos as is relevant and necessary for this designation.

[5] The policy defines "auto" as "a land motor vehicle, 'trailer' or semitrailer designed to travel on public roads" other than mobile equipment. It is undisputed that the truck at issue is an "auto" for purposes of the Hartford policy.

No. 17-30311

Appended to the Hartford policy is a Composite Rating Basis Endorsement ("CRB Endorsement") which explains that the premium was calculated "by applying a composite rate per covered auto." The CRB Endorsement also notes that it "does not change the policy except as shown," expressly modifies the policy's Premium Audit condition by providing additional explanation for how the premium is calculated for "covered autos,"[6] and states that the vehicles identified therein are "[o]wned 'autos' for liability composite rating premium adjustment purposes." The CRB Endorsement does not otherwise refer to the policy's "covered auto" designation symbol as indicative of or relevant to the premium audit calculation. The CRB Endorsement also contains the following table explaining the premium calculation for "owned 'autos'" relevant to this policy:

---

[6] The Premium Audit condition explains that "[t]he estimated premium for [the] Coverage Form is based on . . . exposures" the insureds identified at the beginning of the policy period, and that Hartford would "compute the final premium due" after determining the insureds' actual exposures at the end of the policy period.

No. 17-30311

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE PART

SCHEDULE FOR COMPOSITE RATING BASIS-AUTOMOBILE LIABILITY COVERAGE

IT IS AGREED THAT THE PREMIUM FOR THIS INSURANCE SHALL BE DETERMINED BY APPLYING A COMPOSITE RATE PER COVERED AUTO.

SCHEDULE

| CLASS CODE OR DESCRIPTION | STATE | ESTIMATED # OWNED AUTOS | RATE PER OWNED "AUTO" | ESTIMATED PREMIUM |
|---|---|---|---|---|
|  |  |  |  |  |
| LIGHT-MEDIUM TRUCKS | ALL | 48 | $1,176.45 | $56,470 |
| HEAVY-EXTRA HEAVY TRUCKS[7] | ALL |  |  |  |
| TRUCK-TRACTORS |  |  |  |  |
| PRIVATE PASSENGER | ALL | 37 | $950.41 | $35,165 |
| TRAILERS | ALL | 1 | INCL | INCL |
|  |  |  |  |  |
|  |  |  |  |  |
| TOTAL PREMIUM |  | 86 |  | $91,635 |

After the close of discovery, Hartford and Axis both filed motions for summary judgment disputing whether the Hartford policy provides coverage. Axis sought a declaration that Hartford's policy provided primary coverage for Bennett and the White's claims, and that the Axis policy was excess to the Hartford policy. In so arguing, Axis maintained that the terms of the Business

---

[7] The CRB Endorsement defines "heavy-extra heavy trucks" as "a motorized auto other than a 'private passenger type' with a gross vehicle weight of more than 20,000 pounds."

No. 17-30311

Coverage Auto Form unambiguously dictate what qualifies as a "covered 'auto'" for purposes of the Hartford policy's liability coverage provision, and because Item Two of the Declarations states that the policy covers "any 'auto,'" the truck involved in the accident is clearly covered. Further, because the Hartford policy provides primary coverage, Axis argued that its own policy is excess to Hartford's, and Axis is not obligated to make any payments under its policy "unless or until . . . Hartford pays its entire $2 million limits."

Hartford opposed Axis's motion and filed its own seeking a declaration that its policy did not provide coverage for the claims stemming from the accident.[8] Hartford argued that the CRB Endorsement, and not the Business Auto Coverage Form, defined which of Dana Transport's autos were "covered 'autos'" for purposes of the Hartford policy, and specifically offered that the Hartford policy "unambiguously provide[d] $2,000,000 in underlying liability coverage on [37] personal passenger vehicles, [48] light-medium trucks which weigh less than 20,000 pounds, and one trailer." Hartford averred that the truck driven by Lee at the time of the accident was not a "covered 'auto'" under Hartford's liability coverage because it weighed in excess of 20,000 pounds and was therefore designated a "heavy-extra heavy truck" under the CRB Endorsement, a category of vehicles for which an estimated premium was not calculated. According to Hartford, the truck driven by Lee was exclusively covered by an underlying insurance policy issued by Great West, an excess insurance policy provided by Axis, and a policy of insurance excess to the Axis policy provided by AGLIC with a liability limit of $15,000,000.[9]

---

[8] Hartford has never challenged that Axis's coverage obligations would be excess to its own if the Hartford policy provides coverage.

[9] In response to Hartford's motion, Axis argued that Hartford "waived its coverage defense" because it did not specifically raise the defense in any responsive pleadings.

No. 17-30311

The district court scheduled oral argument on the motions for November 8, 2016. A week before oral argument, Hartford filed a supplemental memorandum in support of its motion for summary judgment and in opposition to that of Axis to introduce the affidavit of Ronald Dana ("the Dana affidavit") as a Dana Transport representative. Hartford argued that this affidavit, along with that of Christopher Stafford, Dana Transport's insurance broker, and Mark Elliott, a Hartford representative, demonstrates the contracting parties' intent to omit coverage for heavy-extra heavy trucks under the Hartford policy.[10] Axis moved to strike the Dana affidavit as unethically obtained, arguing that Hartford's attorney solicited the affidavit without notifying Dana Transport's counsel of record in violation of Louisiana Code of Professional Conduct Rule 4.2. Axis also argued that Hartford failed to disclose Ronald Dana as a potential witness in response to discovery requests and never disclosed any communications with the affiant despite having been served with written discovery requests on this topic. Axis alternatively moved to strike certain paragraphs of the Dana affidavit as stating legal conclusions and for lack of personal knowledge.

After hearing argument from the parties, the district court struck the Dana affidavit as untimely submitted and noted the impropriety of Hartford's conduct in obtaining the affidavit, although the alleged ethical violation did not in any way inform the district court's ruling. Turning to the parties' summary judgment motions, the district court held that Lee was an insured under the policy, recognized that the Hartford policy defined "covered auto" as "any 'auto,'" and concluded that the CRB Endorsement did not conflict with the

---

[10] The Elliot and Stafford affidavits were submitted with Hartford's original motion for summary judgment to establish the contracting parties' intent.

policy's insuring agreement.[11] The court reasoned that the insuring agreement defines the scope of liability coverage, and the purpose of the CRB Endorsement was "merely to calculate premium." The district court noted that if Hartford wanted to restrict coverage to only those autos identified in the CRB Endorsement, Hartford would have changed the "covered auto" designation symbol to "07," which limits liability coverage to "specifically described autos . . . for which a premium charge is shown." The district court concluded that the contract as a whole clearly and unambiguously indicated that the CRB Endorsement did not modify the liability coverage in the policy, and rejected the invitation to consider the Elliot and Stafford affidavits to determine the intent of the contracting parties. On this same basis, the district court held that the Axis policy ranked after the Hartford policy, and denied Hartford's motion for summary judgment.[12] After the district court ruled on the motions, the case proceeded to a bench trial, and the court awarded Bennett and the Whites over $3 million in damages, which exhausted the liability limits established in the Hartford policy. This appeal followed.

## DISCUSSION

On appeal, Hartford challenges (1) the district court's order striking the Dana affidavit as untimely filed, and (2) the district court's holding that the Hartford policy provides coverage for Bennett and the Whites' claims. We consider each issue in turn below.

---

[11] The parties previously disputed whether Lee was an "insured" as defined under the Hartford policy, but Hartford does not challenge the district court's finding in the affirmative on appeal, thus rendering the only issue concerning the terms of Hartford's policy whether the truck involved in the accident is a "covered 'auto'" under the Hartford policy.

[12] The district court did not address Axis's waiver argument.

No. 17-30311

*A. Axis's Motion to Strike*

1. Standard of Review

The district court's order striking the Dana affidavit involves both the enforcement of a scheduling order and the enforcement of discovery rules. This court reviews both under the deferential abuse of discretion standard. *See Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990) (noting that "a trial court's decision to exclude evidence as a means of enforcing a pretrial order 'must not be disturbed' absent a clear abuse of discretion" (quoting *Davis v. Duplantis*, 448 F.2d 918, 921 (5th Cir. 1971))). Considering the broad discretion given to trial courts on discovery issues, it is "unusual [for an appellate court] to find abuse of discretion in these matters." *Swanner v. United States,* 406 F.2d 716, 719 (5th Cir. 1969). This court has observed that the trial court's decision should be reversed only in an "unusual and exceptional case." *Brown v. Thompson,* 430 F.2d 1214, 1216 (5th Cir. 1970).

2. Analysis

The district court cited Hartford's tardiness in identifying Ronald Dana as a witness and submitting his affidavit for consideration with its motion for summary judgment as the primary basis for striking the Dana affidavit.[13] Hartford does not dispute that the affidavit was not timely filed, but argues that its consideration is crucial for establishing the intent of the parties, and it therefore should have been considered. Hartford's argument that the affidavit's relevance constitutes "unusual and exceptional circumstances" warranting reversal of the district court's decision is unavailing. Hartford did

---

[13] Although the district court noted the impropriety of Hartford's conduct in obtaining the Dana affidavit without authorization from Dana's attorney under Louisiana Code of Professional Conduct Rule 4.2, this did not form the basis of the district court's ruling. Therefore, we need not address (1) Axis's standing to raise any alleged ethical violation, (2) whether Hartford did in fact violate Rule 4.2, and (3) if it did, whether this violation warrants striking the Dana affidavit.

No. 17-30311

not seek modification of the scheduling order so that it may apprise the district court of its intent to offer another witness's testimony so as to give Axis an opportunity to depose the witness. Nor did Hartford provide any valid justification for its failure to secure the Dana affidavit before all discovery deadlines had passed, even conceding at oral argument that it could have done so. Given these failures, we conclude that this case presents no "unusual and exceptional circumstances," and the district court did not abuse its discretion in striking the Dana affidavit.[14]

### B. Axis's Motion for Summary Judgment

#### 1. Standard of Review

"This court reviews a district court's grant of summary judgment de novo, applying the same standards as the district court." *Johnson v. World All. Fin. Corp.*, 830 F.3d 192, 195 (5th Cir. 2016). "Interpretation of an insurance contract is a question of law . . . reviewed *de novo*" on appeal from summary judgment. *Tesoro Ref. & Mktg. Co., L.L.C. v. Nat'l Union Fire Ins. Co.*, 833 F.3d 470, 473 (5th Cir. 2016). Summary judgment is required if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Johnson*, 830 F.3d at 195 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "On a motion for summary judgment, this Court must view the facts in the light most favorable to the non-moving

---

[14] Even assuming the district court's order striking the Dana affidavit was erroneous, because we conclude below that the Hartford policy unambiguously provides coverage, we need not consider extrinsic evidence of the parties' intent under Louisiana law. *See* LA. CIV. CODE ANN. art. 2046 (1985) ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.").

party and draw all reasonable inferences in its favor." *Id.* (quoting *Deville v. Marcantel*, 567 F.3d 156, 163–64 (5th Cir. 2009)) (brackets omitted).

2.  Analysis

Under Louisiana law, "[a]n insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." *Cadwallader v. Allstate Ins. Co.*, 02–1637, p. 3 (La. 6/27/03); 848 So. 2d 577, 580. The Louisiana Civil Code provides that "[i]nterpretation of a contract is the determination of the common intent of the parties." LA. CIV. CODE ANN. art. 2045 (1987); *see also Cadwallader*, 848 So. 2d at 580; *La. Ins. Guar. Ass'n. v. Interstate Fire & Cas. Co.*, 93–0911 (La. 1/14/94); 630 So. 2d 759, 763. An insurance contract must be "construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy." LA. REV. STAT. ANN. § 22:881 (2009). "If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written." *Cadwallader*, 848 So. 2d at 580.

"An insurer, like other individuals, is entitled to limit its liability" and may alter coverage under its policy through an endorsement as long as the alteration does not "conflict with statutory law or public policy." *Zeitoun v. Orleans Par. Sch. Bd.,* 09–1130, p. 4 (La. App. 4 Cir. 3/03/10); 33 So. 3d 361, 365 (citing *La. Ins. Guar. Ass'n.*, 630 So. 2d at 763). Should an insurer and insured attach an endorsement to the policy, "the endorsement becomes part of the contract, and the two must be construed together." *Id.* (citing *Mattingly v. Sportsline, Inc.*, 98–230, p. 7 (La. App. 5 Cir. 10/28/98); 720 So. 2d 1227, 1230). "If a conflict between the endorsement and the policy exists, the endorsement    prevails." *Id.* (citing *Chi.    Prop.    Interests,    L.L.C.    v. Broussard,* 08–526, p. 10 (La. App. 5 Cir. 1/13/09); 8 So. 3d 42, 49); LA. CIV.

CODE ANN. art. 2056 (1984). It is only "[i]f coverage is provided in the policy, but then excluded in the endorsement to the policy, [will] coverage . . . be excluded." *Id.*

Neither party argues that the Hartford policy is ambiguous. Rather, the parties dispute whether the policy unambiguously *provides* coverage—Axis's contention—or unambiguously *excludes* coverage—Hartford's contention. Resolution of this issue turns primarily on the purpose of the CRB Endorsement and whether its addition to the insurance policy in any way altered the liability coverage provision in the insuring agreement. The district court concluded that the liability coverage provision of the Hartford policy unambiguously applies to "any auto" because of the designation on Item Two of the Declarations. It also explained that the CRB Endorsement only describes how the premium is calculated and therefore does not modify coverage under the liability provision. Although no Louisiana court has opined on the effect of a similar endorsement on an insurance policy's liability coverage provision, we agree with the district court: the intent of the parties, as evidenced by the terms of the insurance policy—including the CRB Endorsement—was unambiguously to provide liability coverage for the claims at issue.

The two relevant provisions—the "covered 'auto'" designation in Item Two of the Declarations Page and the CRB Endorsement—arguably create some ambiguity when read in isolation. Although the CRB Endorsement provides that it "does not change the policy" other than to list the basis for calculating the policy's premium, that the Schedule listing the vehicles for which the premium is calculated does not list "heavy-extra heavy trucks" presents a perceived conflict within the policy. The discrepancy between Item Two of the Declarations and the CRB Endorsement implies, as Hartford argues, that the parties did not include "heavy-extra heavy trucks" in the

premium calculation because they did not contemplate including that type of vehicle in the policy's liability coverage.

However, we conclude that the "Premium Audit" provision of the contract clarifies any perceived conflict or ambiguity created by the "covered 'auto'" designation and the CRB Endorsement. The "Premium Audit" provision explains the purpose and effect of the CRB Endorsement's premium calculation: "The estimated premium for this Coverage Form is based on the exposures [the insureds] told [Hartford] it would have when the policy began. We will compute the final premium due when we determine your actual exposures." The CRB Endorsement modifies the Premium Audit provision to specifically identify the insureds' actual exposures upon which the final premium is calculated. This leaves open the possibility of the premium increasing during the policy period to cover vehicles not listed in the Schedule at the beginning of the policy period, and adequately reconciles the two seemingly conflicting provisions.[15]

Hartford offers that as a whole, the policy could reasonably be read to provide coverage for "any 'auto,'" as Item Two of the Declarations indicates, with that coverage being "modified" by the CRB Endorsement, which shows the types of autos for which the insured desired coverage. That is, according to Hartford, "[i]t is more rational to define 'any auto' as 'any' of the eighty-six types of autos identified in the CRB Endorsement." However, as the district court noted, Item Two includes as a potential "covered 'auto'" designation "07," which would only provide liability coverage for vehicles for which a premium is calculated. Hartford and the insureds instead opted to use the "01" designation for "any auto," thus providing coverage for any conceivable vehicle.

---

[15] The parties do not indicate why the truck at issue was not originally included in the Schedule setting composite premium rates.

No. 17-30311

*See Fay v. Willis*, 545 So. 2d 1296, 1299 (La. App. 1 Cir. 6/20/1989) (noting that providing liability coverage for "any auto" is "all inclusive *vis a vis* restrictive" and provides coverage for "all conceivable autos for which there might be liability exposure"). To interpret the policy as Hartford suggests—as providing coverage for "any auto" as limited by the CRB Endorsement's premium calculation specifications—would render the "07" designation on the Declarations page without effect.

Finally, Hartford argues that, even assuming the policy unambiguously provides coverage, the court may still consider additional extrinsic evidence of the parties' intent if there is any doubt about the true intent of the parties. To support this contention, Hartford cites *Louisiana Insurance Guaranty Association*, 93–0911 (La. 1/14/94); 630 So. 2d 759, and *Makofsky v. Cunningham*, 576 F.2d 1223 (5th Cir. 1978), which, according to Hartford, authorize courts to consider extrinsic evidence to illuminate the parties' intent as long as such consideration does not modify or alter the terms of the policy—even if the policy itself is unambiguous. However, neither of these cases stand for the proposition for which they are offered. *Louisiana Guaranty* makes clear that "[t]he parties' intent as reflected by the words in the policy determine the extent of coverage." *See La. Ins. Guar. Ass'n*, 630 So.2d at 763. Similarly, *Makofsky* reiterates the basic principles of contract interpretation under Louisiana law that the court has applied to this case—contracts "are interpreted to give effect to the intention of the parties as expressed in the written terms of the contract," although "Louisiana courts will not interpret the words of a contract literally when this leads to unreasonable consequences or inequitable or absurd results." *Makofsky*, 576 F.2d at 1229 (citations omitted). Neither of these cases articulate principles which would require us to consider evidence of the contracting parties' intent outside the four corners of the Hartford policy.

No. 17-30311

To the contrary, Louisiana contract interpretation principles restrain us from considering extra-contractual evidence of the parties' intent where, as here, the insurance policy is unambiguous. Extrinsic evidence is admissible only if "the terms of a written contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed." *Brown v. Drillers, Inc.*, 93–1019 (La. 1/14/94); 630 So. 2d 741, 748 n.10 (quoting *Dixie Campers, Inc. v. Vesely Co.*, 398 So. 2d 1087, 1089 (La. 1981)); *see also Peterson v. Schimek,* 98–1712, p. 10 (La. 03/02/99); 729 So. 2d 1024, 1032 (citing LA. CIV. CODE ANN. art. 1848 (2012)) ("[C]ourts are prohibited from taking parol evidence to explain or contradict an insurance contract's clear meaning."). The Hartford policy is clear in its scope of coverage and does not suffer from the definitional deficiencies that would warrant considering extrinsic evidence. Hartford's argument that the district court, in its search for the true intentions of the parties to the policy, should have considered extrinsic evidence, and that its failure to do so was a dereliction of its responsibility to ascertain the true intentions of the parties, is unavailing.

Because the Hartford policy provides liability coverage for "any 'auto,'" and because the CRB Endorsement does not conflict with the liability coverage provision of the policy, we hold that the policy unambiguously provides coverage in this case. Hartford is therefore liable as a co-primary insurer whose liability limits must be exhausted before recovery may be sought from Axis consistent with the district court's final judgment. We therefore conclude that the district court properly granted Axis's motion for summary judgment and

16

denied that of Hartford, and affirm the district court's summary judgment ruling.[16]

## C. Judicial Notice

On appeal, Hartford argues that we should take judicial notice of "the fact that Dana has admitted it never purchased coverage for heavy-extra heavy trucks" in a lawsuit filed by Hartford in the U.S. District Court for the District of New Jersey.[17] Hartford contends that Dana Transport's "admission" in its answer to Hartford's complaint that the contracting parties intended that the Hartford policy would not provide coverage for 'autos' with a gross vehicle weight greater than 20,000 pounds is dispositive of the parties' intent and should guide our analysis of the contract interpretation issues presented herein. That the insurance policy unambiguously provides coverage and establishes the intent of the contract parties obviates the need to establish the intent of the contracting parties and, further, the need to take judicial notice of Dana Transport's intent. We therefore decline Hartford's invitation to take judicial notice of Dana Transport's "admission."

## CONCLUSION

Considering the foregoing, we AFFIRM the district court's judgment.

---

[16] Given that the basis for our holding on Axis's motion for summary judgment mirrors the arguments included in Hartford's motion, we pretermit discussing whether Hartford waived its coverage defense.

[17] On December 8, 2016, Hartford sued Great West, AGLIC, Axis, and Dana Transport in the U.S. District Court for the District of New Jersey, seeking reformation of the insurance contract that forms the basis of this litigation to exclude coverage for "heavy-extra heavy trucks." The district court dismissed Hartford's reformation claim on res judicata grounds, citing the district court's order in the instant case as having resolved whether the Hartford policy provided coverage.