MAX N. TOBIAS, JR., Judge.
 

 | ]The plaintiff, Kathryn Zeitoun, individually and on behalf of her minor son, Zachery Makowsky (“Zachery”), appeals the trial court’s granting of a motion for summary judgment in favor of the defendant, National Union Fire Insurance Company of Louisiana (“National Union”). For the reasons that follow, having determined that the summary judgment was properly granted, we affirm.
 

 Zachery Makowsky, a student at Lusher Elementary School in New Orleans, allegedly sustained a closed head injury when he struck his head against a wall of the school building while playing kick ball during his physical education class. It is alleged that he suffered sensory loss (smell and taste) and other injuries. Ms. Zeitoun originally filed suit, seeking damages for herself and Zachery, against the Orleans Parish School Board (“OPSB”); the physical education teacher, Steven Volo; West-
 
 *364
 
 port Insurance Corporation, the OPSB’s public liability insurer. By supplemental and amending petitions, Ms. Zeitoun added National Union and the Insurance Company of the State of Pennsylvania (“ISOP”) as defendants on the basis that both the National Union and ISOP policies provide coverage for schoolyard accidents.
 

 |2Ms. Zeitoun filed a motion for partial summary judgment on the coverage issue. National Union opposed Ms. Zeitoun’s motion and submitted its own motion for summary judgment on the basis that its policy did not afford coverage for the subject incident. Following oral argument, the trial court denied Ms. Zeitoun’s motion and granted National Union’s motion, finding that the National Union policy applied solely to liability arising from construction-related activity and did not afford coverage for the personal injuries sustained by Zachery in the schoolyard. Ms. Zeitoun timely appealed the trial court’s dismissal of National Union.
 

 At the time of Zachery’s injury, the OPSB was insured by several different companies. Specifically, the OPSB held an excess liability policy issued by ISOP that provided coverage for all general liability risks in excess of the OPSB’s $500,000 self-retained limit. Also at the time of Zachery’s injury, the OPSB was engaged in a Capital Improvements Program (“CIP III”), consisting of several construction projects at various school properties. In connection with the CIP III, the OPSB procured a general liability policy commonly known as a “wrap-up” or Owner Controlled Insurance Program (“OCIP”) from National Union that provided coverage for risks associated with construction-related activities performed on school property; the policy contained no self-retained limit.
 
 [1]
 
 It is undisputed that joZachery’s injuries were unrelated to construction on the school premises; no repair or renovation work was being performed at Lusher Elementary at the time of the accident.
 

 The sole issue presented by this appeal is whether the wrap-up or OCIP policy issued by National Union to the OPSB provides coverage for the injuries sustained by Zachery.
 

 DISCUSSION
 

 We review this matter
 
 de novo
 
 because only issues of law are presented and the matter comes before us for review on the granting of a motion for summary judgment.
 

 Interpretation of an insurance policy usually involves a legal question that can be resolved properly in the framework of a motion for summary judgment.
 
 Bonin v. Westport Ins. Corp.,
 
 05-0886, p. 4 (La.App.5/17/06), 930 So.2d 906
 
 McGuire v. American Southern Home Ins. Co.,
 
 07-0810, p. 3 (La.App. 4 Cir. 10/10/07), 969 So.2d 681, 684. An insurance policy is a contract between the parties and should be
 
 *365
 
 construed employing the general rules of interpretation of contracts set forth in the Louisiana Civil Code.
 
 Cadwallader v. Allstate Ins. Co.,
 
 02-1637, p. 8 (La.6/27/03), 848 So.2d 577, 580. When the language of a policy is clear and not ambiguous, the insurance contract must be enforced as written. When the wording is clear, a court lacks the authority to alter or change the terms of the policy under the guise of interpretation.
 
 Louisiana Ins. Guar. Ass’n. v. Interstate Fire & Cas. Co.,
 
 93-0911, p. 5 (La.1/14/94), 630 So.2d 759, 763. In interpreting an insurance contract our responsibility is to determine the parties’ common intent; such intent is to be determined according to the ordinary, plain, |4and popular meaning of words used in a policy.
 
 Id.;
 
 La. C.C. arts. 2045 and 2047. The liability under a comprehensive liability policy is only as provided in the policy and attached endorsements. The parties are free to select the types of risks to be covered.
 
 First Mercury Syndicate, Inc. v. New Orleans Private Patrol Service, Inc.,
 
 600 So.2d 898, 900 (La.App. 4 Cir.1992).
 

 An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion.
 
 Carrier v. Reliance Ins. Co.,
 
 99-2573, pp. 11-12 (La.4/11/00), 759 So.2d 37, 43 (quoting
 
 Louisiana Ins. Guar. Ass’n, id.).
 
 An insurer, like other individuals, is entitled to limit its liability and to impose and enforce reasonable conditions upon the policy obligations it contractually assumes; it may change or amend the coverage provided by the policy by an endorsement attached to the policy as long as the provisions and/or endorsements do not conflict with statutory law or public policy.
 
 Louisiana Ins. Guar. Ass’n, id.,
 
 p. 6, 630 So.2d at 763. If an endorsement is attached to the policy and the policy and endorsements are parts of the same contract, the endorsement becomes part of the contract, and the two must be construed together.
 
 Mattingly v. Sportsline, Inc.,
 
 98-230, p. 7 (La.App. 5 Cir. 10/28/98), 720 So.2d 1227, 1230. If a conflict between the endorsement and the policy exists, the endorsement prevails.
 
 Chicago Property Interests, L.L.C. v. Broussard,
 
 08-526, p. 10 (La.App. 5 Cir. 1/3/09), 8 So.3d 42, 49. If coverage is provided in the policy, but then excluded in the endorsement to the policy, coverage will be excluded.
 
 Id.
 

 |fiIf after applying the general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer and in favor of coverage.
 
 Cadwallader, id.,
 
 p. 3, 848 So.2d at 580;
 
 Carrier, id.
 
 p. 12, 759 So.2d at 43-44. Under the rule of strict construction, equivocal provisions seeking to narrow an insurer’s obligation are strictly construed against the insurer.
 
 Louisiana Ins. Guar. Ass’n, id.,
 
 p. 6, 630 So.2d at 764. The principle, however, is subject to exceptions.
 
 Cadwallader, id.,
 
 p. 3, 848 So.2d at 580;
 
 Carrier, id.,
 
 p. 12, 759 So.2d at 43-44. An exception is that the strict construction rule applies only if the ambiguous policy provision is susceptible to two or more reasonable interpretations.
 
 Cadwallader, id.,
 
 p. 3, 848 So.2d at 580;
 
 Carrier, id.,
 
 p. 12, 759 So.2d at 43-44. Put simply, for the rule of strict construction to apply, the insurance policy must not only be susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable.
 
 Cadwallader, id.,
 
 at p. 3, 848 So.2d at 580;
 
 Carrier, id.,
 
 p. 12, 759 So.2d at 43-44.
 

 In the instant case, Ms. Zeitoun contends that because National Union’s OCIP policy is a commercial general liability (“CGL”) policy, by its very terms, it affords coverage for Zachery’s claims, and
 
 *366
 
 that the endorsements expand rather than restrict the coverage to include not only personal injuries such as those suffered by Zachery, but also liability arising out of any construction project on the OPSB properties. Alternatively, Ms. Zeitoun avers that the policy terms are ambiguous and, accordingly, any ambiguity should be resolved against Nation Union and in favor of coverage. We disagree and find that Ms. Zeitoun’s arguments are misplaced.
 

 [^We do not find that the National Union policy and endorsements contain any ambiguity. We find the policy to be a traditional wrap-up or OCIP policy issued providing coverage for rehabilitation and/or construction projects (i
 
 e.,
 
 the CIP III) being performed on various OPSB properties. Wrap-up or OCIP policies are primarily used for large construction projects and are generally obtained by the owner of a project to cover workers’ compensation and liability risks of specific parties to a construction project and risks associated with the job site.
 
 See Liberty Mutual Ins. Co. v. Louisiana Ins. Rating Comm’n.,
 
 96-0793, p. 2 (La.App. 1 Cir. 2/14/97), 696 So.2d 1021, 1023.
 
 [2]
 
 By obtaining an OCIP, the owner, or sponsor, procures insurance for himself, the general contractor, subcontractors, and employees working on the construction project.
 
 Id.
 
 The coverage, however, is generally limited in scope and covers only risks associated with the specific project.
 

 Both the Common Policy Declarations and CGL Declarations pages of National Union’s policy delineate the “business description” for which the policy was issued as “Construction.” Additionally, National Union’s policy endorsements, which are a part of the policy itself, specifically reference “construction,” the “project(s),” the “project sites,” as well as “contractors” or “subcontractors,” clearly indicating the policy pertains to construction in conjunction with the CIP III for which the OPSB procured the policy.
 
 [3]
 

 
 *367
 
 | 7As set forth in La. R.S. 22:881, “[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the |8policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy.” The terms of an insurance contract must be interpreted consistently so as not to render portions of the policy of no significance, surplusage, or meaningless.
 
 Fontenot v. Diamond B Marine Services, Inc.,
 
 05-0863 p. 7 (La.App. 4 Cir. 7/26/06), 937 So.2d 425, 430. In the case at bar, we find that, given the nature of a “wrap up” policy or owner-controlled insurance program, these various policy endorsements, when read in conjunction with the National Union policy as a whole, restrict and/or limit rather than expand coverage to liability arising out of construction-related incidents in conjunction with the CIP III project for which the OCIP policy was issued.
 

 In short, we do not find Ms. Zei-toun’s interpretation of the policy to be logical or reasonable. If, in fact, the endorsements “expanded” coverage to include construction projects as posited by Ms. Zeitoun, the endorsements would be nothing more than surplusage and/or of no significance because, if the National Union policy were a conventional CGL policy as Ms. Zeitoun suggests, such a policy would already cover construction and the construction endorsements would not be needed. Instead, the purpose of the endorsements is to actually acknowledge that the coverage provided under the National Union policy is restricted to general liability coverage for construction projects only. The only reasonable interpretation of the policy is that it provides general liability coverage to the OPSB limited solely to
 
 *368
 
 risks associated with the construction projects of the CIP III, and does not afford coverage for the injuries sustained by Zachery. No ambiguity between the endorsements and the policy exists. As the Supreme Court [9stated in
 
 Cadwallader, id.,
 
 pp. 3-4, 848 So.2d at 580, “the rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists.” Applying the established rules of construction, we conclude the argument set forth by Ms. Zeitoun is not a reasonable interpretation of the policy.
 

 CONCLUSION
 

 For the foregoing reasons, the judgment granting the motion for summary judgment in favor of National Union is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . In the Louisiana Department of Insurance’s Office of Property and Casualty Insurance Rating and Policy Forms, Filing Handbook, wrap-up insurance is defined as a "policy that covers exposures for a large group. Each member of the group is connected to other members by one or more common insuring characteristics. For example, wrap-up insurance can be written for all the various businesses working together on a special project. Wrap-up insurance includes owner-controlled insurance programs.” According to the Louisiana Department of Insurance, wrap-up "insurance rates and rules must be filed with and approved by the OPC [Office of Property and Casualty] before they can be used in Louisiana. A wrap-up insurance filing must adhere to directives contained in all LIRC [Louisiana Insurance Rating Commission] and OPC bulletins and must conform to all Louisiana Statutes.”
 
 See
 
 Louisiana Department of Insurance, Office of Property and Casualty Insurance Rating and Policy Forms, Filing Handbook, July 2009, p. 31.
 
 See also
 
 Bulletin LIRC 95-03, dated 21 June 1995.
 

 [2]
 

 .
 
 See also,
 
 J. Randolph Evan and J. Stephen Berry,
 
 Construction Defect Coverage Law: Past, Present, and Future,
 
 New Appleman on Insurance: Current Critical Issues in Insurance Law, IV(C) (December 2008).
 

 [3]
 

 . Endorsement MS #0001, the
 
 "NAMED INSURED ENDORSEMENT "
 
 amends the original named insured and changes it from "Orleans Parish School Board" to "ORLEANS PARISH SCHOOL BOARD, ET AL AND ITS RELATED ENTITIES AFFILIATED WITH THIS PROJECT, CONTRACTORS AND SUBCONTRACTORS OF ANY TIER FOR WHOM THE AFOREMENTIONED INSUREDS HAVE AGREED TO FURNISH THE INSURANCE COVERAGE PROVIDED UNDER THIS POLICY.”
 

 Endorsement MS # 0002, the
 
 "ADDITIONAL DEFINITIONS ENDORSEMENT,"
 
 amended and changed the policy as follows:
 

 16. The term "Sponsor" as used herein shall mean Orleans Parish School Board, et al.
 

 17. The term "Contractors” as used herein shall mean contractors who have executed the Contract Document with the Orleans Parish School Board, et al, have been enrolled in this insurance program, and who perform operations at the Project Site in connection with the Project.
 

 18. The term "Project Site” means: Various location(s) under the control of the Orleans Parish School Board, wherein contracts have been awarded for The Rehabilitation and/or Construction of these facilities by The Board as provided for under The Owner Controlled Insurance Program.
 

 19. The term "from” the Project Site means emanating from the Project Site.
 

 20. The term "Project” or "the Project” as used herein means: As described in Contract Documents between Orleans Parish School Board, et al and contractors.
 

 Additionally, Endorsement MS # 0007, which clearly states that the "ENDORSEMENT CHANGES THE POLICY,” further states, in part:
 

 [I] T IS HEREBY UNDERSTOOD AND AGREED THAT THE COVERAGE PROVIDED UNDER THIS POLICY FOR "PROD-U CTS-COMPLETED OPERATIONS HAZARD” IS EXTENDED TO APPLY FOR A PERIOD BEGINNING AT THE INCEPTION DATE OF THIS POLICY AND EXTENDED
 
 *367
 
 FOR THREE (3) YEARS AFTER FINAL COMPLETION OF THE DESIGNATED PROJECT BY THE OWNER AS COVERED AND DEFINED BY THIS POLICY.”
 

 The
 
 "TERM OF PROJECT ENDORSEMENT,"
 
 Endorsement MS # 0009, which specifies the term of the project, provides: IT IS AGREED AND UNDERSTOOD THAT COVERAGE AFFORDED BY THIS PROJECT AND ITS RENEWAL(S) IS FOR THE TERM OF THE PROJECT COMMENCING ON 3/09/99 THROUGH 3/09/03, UNLESS SPECIFICALLY AMENDED BY ENDORSEMENT TO THIS POLICY.
 

 Endorsement MS #0010, the
 
 "DESIGNATED PROJECT SITE ENDORSEMENT ”
 
 provides:
 

 IT IS HEREBY AGREED AND UNDERSTOOD THAT THE DESIGNATED PROJECT SITE IS COVERED BY AN “OWNER CONTROLLED INSURANCE PROGRAM' AND THAT THE INSURANCE OFFERED BY THIS PROGRAM IS PRIMARY FOR ALL "NAMED INSUREDS” AFFORDED COVERAGE BY CONTRACT DOCUMENTS AND/OR SPECIFICALLY ENDORSED HERETO:
 

 A. PROJECT SITE(S) AS IDENTIFIED IN THE CONTRACT DOCUMENTS AND/OR CONSTRUCTION DOCUMENTS BETWEEN ORLEANS PARISH SCHOOL BOARD, ET AL AND CONTRACTORS AND/OR SUB-CONTRACTORS.
 

 B.
 
 DESIGNATED LOCATION/PROJECT:
 
 THOSE AREAS INDICATED IN THE CONTRACT DOCUMENTS WHERE CONSTRUCTION WORK IS PERFORMED, INCLUDING THE WAYS AND MEANS IMMEDIATELY ADJOINING THERETO, BUT EXCLUDING OFF-SITE MANUFACTURING AND FABRICATION SITES.
 

 AS RESPECTS CONTRACTORS AND SUBCONTRACTORS INCLUDED AS NAMED INSUREDS, IT IS AGREED THAT THE POLICY APPLIES TO ALL OPERATIONS CONDUCTED AT THE PROJECT SITES ADJACENT OR NEARBY UNLESS SPECIFICALLY ENDORSED THEREIN.
 

 The
 
 "COMPOSITE RATE ENDORSEMENT,"
 
 Endorsement MS #0011, identifies the
 
 "DESCRIPTION OF OPERATIONS"
 
 as being "CONSTRUCTION OPERATIONS.”
 

 Lastly, Endorsement MS # 0022, entitled,
 
 “AMENDED HIRED AUTO AND NON-OWNED AUTO LIABILITY,"
 
 provides: INSURANCE IS PROVIDED ONLY WITH RESPECT TO THOSE COVERAGES FOR ORLEANS PARISH SCHOOL BOARD IN CONJUNCTION WITH CONSTRUCTION.