JOY COSSICH LOBRANO, Judge.
| iThis case involves an insurance coverage dispute arising from a wrongful death and products liability claim. The plaintiff/appellant, Lindsey King (“King”), individually and on behalf of her deceased minor child Peyton Wilt (“Wilt”), appeals the June 26, 2015 judgment of the district court granting summary judgment in favor of defendant/appellee, Old Republic Insurance Company (“Old Republic”), and dismissing all claims against Old Republic with prejudice.
On September 21, 2014, Wilt was killed in an aircraft crash, along with Darren Mahler (“Mahler”). Mahler was the pilot of a gyrocopter, an experimental amateur-built aircraft, in which Wilt was Mahler’s passenger at the time of the crash. Prior to the crash, Mahler purchased the gyro-copter from Christopher Brupbacher (“Brupbacher”), who also built the gyro-copter. The gyrocopter was registered with the Federal Aviation Association (“FAA”) with an experimental category airworthiness certificate.
On March 16, 2015, King filed a petition for damages naming as defendants Old Republic, Mahler’s estate, Brupbacher, and Dofin Fritts d/b/a Have Gyro Will 12Travel (“Fritts”). In her petition, King alleged that Fritts inspected and provided training regarding the gyrocopter prior to its sale to Mahler. King brought claims against. Brupbacher and Fritts under the Louisiana Products Liability Act, as set forth in La. R.S. 9:2800.51. King also alleged that Old Republic issued to Mahler an aviation insurance policy (the “policy”), which King alleged provided coverage for bodily injury and property damage resulting from the crash.
Old Republic filed a motion for summary judgment on May 8, 2015, contending that the policy it issued to Mahler provided no coverage for the flight or crash of the gyrocopter or for the death of Mahler’s passenger, Wilt. Old Republic argued that its policy covered only a 1973 Piper PA-28-140 fixed wing aircraft (the “Piper”), which was listed in the declarations section of the policy and was not involved in the crash. However, Mahler did not seek to add the gyrocopter as a covered aircraft under the policy.
King opposed summary judgment, arguing that the policy provided coverage for “any aircraft” that is “used by the named insured [Mahler]” which “is not an aircraft described in Item 5 of the Declarations.” King pointed to the Expanded Amendato-ry Endorsement (the “endorsement”) attached to the policy which reads, in pertinent part, as follows:
6. THE LIABILITY COVERAGES AFFORDED BY THIS POLICY ARE EXTENDED TO APPLY TO THE USE, BY OR ON BEHALF OF THE NAMED INSURED, OF ANY AIRCRAFT WHICH:
(a) IS NOT OWNED IN WHOLE ' OR IN PART BY, OR FURNISHED FOR REGULAR USE TO THE NAMED INSURED;
la(b) IS NOT AN AIRCRAFT DESCRIBED IN ITEM 5 OF THE DECLARATIONS;
(c) HAS A STANDARD AIRWORTHINESS CERTIFICATE;
(d) HAS A CERTIFICATED GROSS TAKE OFF WEIGHT OF NO MORE THAN 12,500 POUNDS;
(e) HAS A MAXIMUM OF SEVEN SEATS, INCLUDING CREW.
*992 King asserted that the endorsement was drafted without the conjunctive “and” between elements (a) through (e). Thus, King argued, the absence of an “and” renders each element independent and disjunctive from the other, and there is no express requirement that all elements must be satisfied for an extension of liability coverage under the policy. According to King’s argument, each of elements (a) through (e) should be read as though an “or” followed each semicolon. King contended, in the alternative, that the endorsement is ambiguous, susceptible of multiple interpretations, and should be construed in favor of coverage. King further argued that Mahler believed there was coverage for the gyrocopter, and Mahler’s wife attested to her understanding of this belief in- an affidavit, which was introduced by King in opposition to summary judgment. .
In its reply to King’s opposition, Old Republic argued that King’s interpretation of the endorsement would lead to absurd results, in that such an interpretation would render the policy as providing coverage for any aircraft that Mahler, chose to use. Old Republic also contended that the affidavit of Mahler’s wife was inadmissible as hearsay and as parol evidence that does not change the terms of the policy.
|40n September 26, 2015, the district court rendered judgment, finding that Old Republic was entitled to judgment as a matter of. law and dismissing all claims brought by King against Old Republic with prejudice.
King initially applied for supervisory writs, which this Court granted for the purpose of remanding to the district court to consider Kind’s notice of intent to apply for supervisory writs as a petition for appeal. This' appeal followed.
King argues on appeal that the district court erred as a matter of law in finding no coverage for the gyrocopter. King also contends that the policy is vague, ambiguous, and susceptible of multiple reasonable interpretations, and should be construed in favor of coverage.
“A summary judgment is reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court’s determination of whether summary judgment is appropriate; i.e. whether there is any genuine issue of material fact, and whether the mov-ant is entitled to judgment as a matter of law.” Samaha v. Rau, 2007-1726, pp. 3-4 (La.2/26/08), 977 So.2d 880, 882-83. “A dispute as to whether, as a matter of law, an insurance policy provides or precludes coverage to a party usually involves a legal question • which can be resolved in the framework of a motion for summary judgment.” Batiste v. City of New Orleans, 2011-1168, p. 3 (La.App. 4 Cir. 2/29/12), 85 So.3d 800, 802 (citing Dore v. Brignac, 2000-1719, p. 3 (La.App. 4 Cir. 6/20/01), 791 So.2d 736, 738.) “When determining whether or not a policy affords coverage for an incident, it is the burden of the insured to prove the incident falls within the policy’s terms.” Doerr v. Mobil Oil Corp., 2000-0947, p. 5 (La.12/19/00), 774 So.2d 119, 124, modified on other grounds on reh’g, 2000-0947 (La.3/16/01), 782 So.2d 573. “Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded.” Reynolds v. Select Properties, Ltd., 93-1480, p. 2 (La.4/11/94), 634 So.2d 1180, 1183 (citing Westerfield v. LaFleur, 493 So.2d 600, 605 (La.1986)).
In Bonin v. Westport Ins. Corp., 2005-0886 (La.5/17/06), 930 So.2d 906, the Loui *993 siana Supreme Court summarized the principles for construing insurance policies as follows:
An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. Cadwallader v. Allstate Ins. Co., 02-1637, p. 3 (La.6/27/03), 848 So.2d 577, 580; Louisiana Ins. Guar. Ass’n v. Interstate Fire & Casualty Co., 93-0911, p. 5 (La.1/14/94), 630 So.2d 759, 763. The judicial responsibility in interpreting insurance contracts is to determine the parties’ common intent. La. C.C. art.2045; Louisiana Ins. Guar. Ass’n, 93-0911 at p. 5, 630 So.2d at 763; Garcia v. St. Bernard Parish School Board, 576 So.2d 975, 976 (La.1991). Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. La. C.C. art.2047; Cadwallader, 02-1637 at p. 3, 848 So.2d at 580; Carbon v. Allstate Ins. Co., 97-3085, p. 4 (La.10/20/98), 719 So.2d 437, 439.
An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Carrier v. Reliance Ins. Co., 99-2573, pp. 11-12 (La.4/11/00), 759 So.2d 37, 43 (quoting Louisiana Ins. Guar. Ass’n, 93-0911 at p. 5, 630 So.2d at 763). Unless a policy conflicts with statutory provisions or public policy, it may limit an insurer’s liability and impose and enforce reasonable conditions upon |-Bthe policy obligations the insurer contractually assumes. Carbon, 97-3085 at p. 5, 719 So.2d at 440; Louisiana Ins. Guar. Ass’n, 93-0911 at p. 6, 630 So.2d at 763.
If after applying the other ■ general rules of construction an ambiguity remains, the ambiguous: contractual provision is to be construed against the insurer and in favor of coverage. Cadwallader, 02-1637 at p. 3, 848 So.2d at 580; Carrier, 99-2573 at p. 12, 759 So.2d at 43-44. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer’s obligation are strictly construed against the insurer. Louisiana Ins. Guar. Ass’n, 93-0911 at p. 6, 630 So.2d at 764; Garcia, 576 So.2d at 976. That strict construction principle, however, is subject to exceptions. Cadwallader, 02-1637 at p. 3, 848 So.2d at 580; Carrier, 99-2573 at p. 12, 759 So.2d at 43-44. One of these exceptions is that the strict construction rule applies only if the ambiguous policy provision is susceptible to two or more reasonable interpretations. Cadwallader, 02-637 at p. 3, 848 So.2d at 580; Carrier, 99-2573 at p. 12, 759 So.2d at 43-44. For the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each -of the'alternative interpretations must be reasonable. Cadwallader, 02-1637 at p. 3, 848 So.2d at 580; Carrier, 99-2573 at p. 12, 759 So.2d at 43-44.
Bonin, 2005-0886 at pp. 4-6, 930 So.2d at 910-11.
“An insurer, like other individuals, is entitled to limit its liability and to impose and enforce reasonable conditions upon the policy obligations it contractually assumes; it may change or amend the coverage provided by the policy by an endorsement attached to the policy as long as the provisions and/or endorséments do not conflict with statutory law or public policy.” Zeitoun v. Orleans Par. Sch. Bd., 2009-1130, p. 4 (La.App. 4 Cir. 3/3/10), 33 *994 So.3d 361, 365 (citing Louisiana Ins. Guar. Ass’n, 93-0911 at p. 6, 630 So.2d at 763). “If an endorsement is attached to the policy and the policy and endorsements are parts of the same contract, the endorsement becomes part of the contract, and the two must be construed together.” Zeitoun, 2009-1130 at p. 4, 33 So.3d at 365 (citing Mattingly v, Sportsline, Inc., 98-230, p. 7 (La.App. 5 Cir. 10/28/98), 720 So.2d 1227, 1230). 17“If a conflict between the endorsement and the policy exists, the endorsement prevails.” Zeitoun, 2009-1130 at p. 4, 33 So.3d at 365 (citing Chicago Property Interests, L.L.C. v. Broussard, 2008-526, p. 10 (La.App. 5 Cir. 1/13/09), 8 So.3d 42, 49). “If coverage is provided in the policy, but then excluded in the endorsement to the policy, coverage will be excluded.” Id.
The Old Republic policy at issue, which listed Mahler as its insured, was in effect from September 18, 2014 to September 18, 2015. The gyrocopter accident occurred on September 21, 2014. The policy’s declarations section included a provision entitled “Item 5. Description of Aircraft and Physical Damage Coverage hereunder” which identified a single aircraft, the Piper.
The policy provisions contained a section of “Insuring Agreements” that stated as follows:
I. LIABILITY COVERAGES
[[Image here]]
Coverage C — Passenger Bodily Injury Liability — To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury sustained by any passenger.
... caused by an occurrence and arising out of the ownership, maintenance or use of the aircraft ...
The section of the policy entitled “Definitions” stated that “When appearing in this policy: ‘Aircraft’ means the aircraft described in the Declarations or any Aircraft qualifying under the provisions of the Special Insuring Agreements ...” No party has argued that any provision of the “Special Insuring Agreements” section of the policy apply to the accident at issue on appeal.
|sThe Expanded Amendatory Endorsement, which is the endorsement at issue in this appeal, stated, in relevant part, as follows:
6. THE LIABILITY COVERAGES AFFORDED BY THIS POLICY ARE EXTENDED TO APPLY TO THE USE, BY OR ON BEHALF OF THE NAMED INSURED, OF ANY AIRCRAFTWHICH:
(a) IS NOT OWNED IN WHOLE OR IN PART BY, OR FURNISHED FOR REGULAR USE TO THE NAMED INSURED;
(b) IS NOT AN AIRCRAFT DESCRIBED IN ITEM 5 OF THE DECLARATIONS;
(c) HAS A STANDARD AIRWORTHINESS CERTIFICATE;
(d) HAS A CERTIFICATED GROSS TAKE OFF WEIGHT OF NO MORE THAN 12,500 POUNDS;
(e) HAS A MAXIMUM OF SEVEN SEATS, INCLUDING CREW.
The parties cite to no Louisiana case, and we find none, interpreting either the endorsement or the grammatical construction advanced by King on appeal. Nevertheless, we have reviewed the language of the endorsement at issue here, together with the policy language, and we find no ambiguity in the endorsement. The endorsement sets forth five clauses, (a) through (e), each separated by a semicolon. Each clause states a qualification that *995 must be satisfied in order for the endorsement to provide coverage for a particular aircraft. We are not persuaded by King’s argument that the absence of an “and” following each semicolon at the end of each clause renders the endorsement ambiguous.
We also do not find that the affidavit of Mahler’s wife, attesting to Mahler’s purported understanding of the terms and conditions of the policy, creates ambiguity in the endorsement or raises any genuine issue of material fact. The |arecord on appeal does not reflect that Old Republic moved to strike the affidavit of Mahler’s wife or that the district court explicitly ruled upon the admissibility or competency of this evidence. Regardless, “courts are prohibited from taking parol evidence to explain or contradict the insurance contract’s clear meaning.” Peterson v. Schimek, 98-1712, p. 10 (La.3/2/99), 729 So.2d 1024, 1032 (citing La. C.C. art. 1848).
Under King’s interpretation of the endorsement, an aircraft could qualify for ancillary coverage under the policy by satisfying any one of the five clauses, without having to meet the requirements of any other clause. To interpret the endorsement as affording coverage, for the sole reason that the gyrocopter was not listed on the policy declarations page, would produce absurd. results.[1] As Old Republic points out, King’s interpretation would mean that any aircraft other than the single listed aircraft, the Piper, would qualify as a covered aircraft, without regard to the ownership, FAA airworthiness certification, weight,, or seating capacity of the aircraft. We find this to be a strained interpretation of the policy in contravention of Louisiana law, and we decline to read the endorsement, together with the policy, in the manner advanced by King.[2] Considering the facts before us, we find that the criteria set forth in all five clauses must all be satisfied in order for the endorsement to extend liability coverage to an aircraft. '
I inHere, it is undisputed that the' gyro-copter satisfies clause (b), because the gy-rocopter is not listed in the policy declarations. However, the undisputed facts also show that the gyrocopter does not meet the requirements of either clause (a) or (c), in that Mahler owned the gyrocopter and the gyrocopter lacked a standard airworthiness certificate,'instead having only an experimental airworthiness certificate. King has not come forward with undisputed evidence in opposition to summary judgment, which demonstrates that the gy-rocopter satisfies clause (d) or (e), specifically a maximum weight of 12,500 pounds and a maximum of seven seats.[3]
*996 Because the gyrocopter does not satisfy all five clauses set forth in the endorsement, was not listed in the policy declarations, and because Mahler did not obtain additional coverage for the gyrocopter, there is no genuine issue of material fact that the policy did not provide coverage to Mahler for damages arising from the gyro-copter accident on September 21, 2014. Therefore, Old Republic is entitled to summary judgment and dismissal of all claims against it in this matter.
|uFor the reasons stated above, we affirm the district court’s June 26, 2015 judgment granting summary judgment in favor of Old Republic and against King, and dismissing all claims against Old Republic with prejudice.
AFFIRMED.

. "An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion.” Louisiana Ins. Guar. Ass’n, 93-0911 at p. 5, 630 So.2d at 763.

. See id.

. As the Louisiana Supreme Court explained: [The summary judgment procedure] first places the burden of producing evidence at the hearing on the motion for summary judgment on the mover (normally the defendant), who can ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent’s case. At that point, the party who bears the burden of persuasion at trial (usually the plaintiff) must come forth with evidence (affidavits or discovery responses) which demonstrates he or she will be able to meet the burden at trial.... Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. *996 Reynolds v. Bordelon, 2014-2371, pp. 3-4 (La.6/30/15), 172 So.3d 607, 611 (emphasis added).