| DOMINIQUE ROTOLO OLIVIER AND RYAN J. OLIVIER | * | NO. 2025-CA-0124 |
|---|---|---|
| | * | |
| | | COURT OF APPEAL |
| VERSUS | * | |
| | | FOURTH CIRCUIT |
| SARA U. BAYHI, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, AND MAISON INSURANCE COMPANY, INC., ET AL | * | |
| | | STATE OF LOUISIANA |
| | * * * * * * * | |

APPEAL FROM
25TH JDC, PARISH OF PLAQUEMINES
NO. 64-884, DIVISION "B"
Honorable Michael D. Clement
* * * * * *
**Judge Karen K. Herman**
* * * * * *

(Court composed of Judge Rachael D. Johnson, Judge Karen K. Herman, Judge Nakisha Ervin-Knott)


John E. Pivach
PIVACH, PIVACH, HUFFT, THRIFFILEY & DUNBAR, LLC
8311 Highway 23, Suite 104
P.O. Box 7125
Belle Chasse, LA 70037

      COUNSEL FOR PLAINTIFF/APPELLANT

W. Briggs Scott
Stephen R. Barry
BARRY ROME & SCOTT, LLC
612 Gravier Street
New Orleans, LA 70130

      COUNSEL FOR DEFENDANT/APPELLEE, LOUISIANA INSURANCE GUARANTY ASSOCIATION

          **AFFIRMED**
          **AUGUST 8, 2025**

Dominique Rotolo Olivier and Ryan Olivier ("Plaintiffs") appeal the October 10, 2024 judgment granting summary judgment in favor of Louisiana Insurance Guaranty Association ("LIGA"). For the reasons that follow, we affirm.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

On November 11, 2018, Plaintiffs filed a Petition for Damages against various defendants alleging damages arising out of an accident that occurred on November 10, 2017. The petition asserts that Mrs. Olivier was struck by a golf cart that was operated by Sara Bayhi ("Mrs. Bayhi") and owned by Sarah B. Lasseigne and Christopher D. Lasseigne, Jr. ("the Lasseignes"). The accident occurred on property owned by Carrie Dore and Jared Dore ("the Dores").[1]

At the time of the accident, Mrs. Bayhi had automobile insurance with State Farm Mutual Insurance Company and homeowner's insurance with Maison Insurance Company ("Maison"). On September 27, 2022, LIGA intervened after Maison became insolvent.

The Lasseignes filed a Cross-Claim against their homeowner's insurer, United Property and Casualty Insurance Company ("UPC"). UPC filed a Motion

_____

[1] By Order dated August 5, 2024, the Lasseignes and the Dores have been dismissed from this action.

for Summary Judgment arguing that pursuant to an endorsement contained in the policy ("UPC Policy") coverage was excluded for any damages arising out of the use of a recreational vehicle such as a golf cart. A judgment was rendered on September 14, 2021, granting summary judgment in favor of UPC. Plaintiffs did not appeal the judgment dismissing UPC.

On July 31, 2024, Plaintiffs filed a Motion for Summary Judgment, asserting that the homeowner's policy issued to Mrs. Bayhi by Maison ("Maison Policy") provided coverage for the damages incurred as a result of the accident. Therein, Plaintiffs argued that an endorsement relied upon by LIGA to deny coverage creates a conflict within the Maison Policy that should be interpreted in favor of coverage.

In response, LIGA filed a Cross-Motion for Summary Judgment asserting that the Recreational Vehicle Endorsement ("Endorsement") contained in the Maison Policy precluded coverage for damages arising out of the golf cart accident.

The matters were heard on October 3, 2024. Judgment was rendered on October 10, 2024, denying Plaintiffs' Motion for Summary Judgment and granting LIGA's Cross-Motion for Summary Judgment. In its Reasons for Judgment, the trial court determined that the Endorsement contained in the Maison Policy "clearly applies to Ms. Olivier's injuries as she was injured by Ms. Bayhi's operation of a recreational vehicle." Plaintiffs' timely appeal followed.

On appeal, Plaintiffs assert that the trial court erred in granting summary judgment in favor of LIGA by: 1) improperly applying the Endorsement to conclude that the Maison Policy does not provide coverage; and 2) reasoning that

2

the Endorsement contained in the UPC Policy was "nearly identical" to the Maison Policy endorsement.[2]

**SUMMARY JUDGMENT PRINCIPLES AND STANDARD OF REVIEW**

"Appellate courts review the grant or denial of a motion for summary judgment *de novo*." *In re Medical Review Complaint by Downing*, 2021-0698, p. 8 (La. App. 4 Cir. 5/26/22), 341 So.3d 863, 869 (citing *Indep. Fire Ins. Co. v. Sunbeam Corp.*, 1999-2181, 1999-2257, p. 7 (La. 2/29/00), 755 So.2d 226, 230).

In *Mapes v. State through Bd. of Supervisors of Louisiana State Univ. Agric. & Mech. Coll.*, 2021-0166, pp. 4-5 (La. App. 4 Cir. 3/2/22), 336 So.3d 494, 497, this Court reiterated the law on summary judgment, stating:

> "The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969." La. C.C.P. art. 966(A)(2). "The procedure is favored and shall be construed to accomplish these ends." *Id*. "[A] motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). "The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions." La. C.C.P. art. 966(A)(4).
>
> "The burden of proof rests with the mover." La. C.C.P. art. 966(D)(1). However, "if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden ... does not require him to negate all essential elements of the adverse party's claim, action, or defense." *Id*. Instead, the moving party must "point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." *Id*. Then, "[t]he burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id.*

---

[2] Plaintiffs have not presented an argument related to the denial of their motion for summary judgment.

"A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue, and summary judgment is appropriate." *Maddox v. Howard Hughes Corp.*, 19-0135, p. 5 (La. App. 4 Cir. 4/17/19), 268 So.3d 333, 337. " 'A fact is material when its existence or nonexistence may be essential to the plaintiffs [sic] cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute." *Id*. (quoting *Chapital v. Harry Kelleher & Co., Inc.*, 13-1606, p. 5 (La. App. 4 Cir. 6/4/14), 144 So.3d 75, 81). "Whether a fact is material is a determination that must be made based on the applicable substantive law." *Maddox*, 19-0135, p. 5, 268 So.3d at 337.

"Whether an insurance policy provides for, or precludes, coverage as a matter of law is an issue that can be resolved within the framework of a motion for summary judgment." *Riggio v. Ports America Louisiana, LLC*, 2024-0436, p. 16 (La. App. 4 Cir. 12/5/24), 407 So.3d 636, 645 (quoting *Certain Underwriters at Lloyd's of London v. Duxworth Roofing and Sheetmetal, Inc.*, 2022-0821, p. 7 (La. App. 4 Cir. 7/18/23), 370 So.3d 1144, 1149).

**DISCUSSION**

In support of its Motion for Summary Judgment, LIGA introduced the following: 1) a certified copy of the Maison Policy; 2) Plaintiffs' Petition for Damages; 3) the Judgment granting UPC's Motion for Summary Judgment; 4) the Lasseignes' Responses to Interrogatories and Requests for Production of Documents issued by UPC; 5) UPC's Memorandum in Support of its Motion for Summary Judgment; 6) Transcript of the August 5, 2021 Hearing on UPC's Motion for Summary Judgment; 7) the Lasseignes' Responses to Requests for Admissions issued by UPC; and 8) Memorandum in Support of Plaintiffs' Motion for Summary Judgment.

In opposition, Plaintiffs introduced documents presented in connection with their Motion for Summary Judgment, including the Petition for Damages, the

4

Maison Policy, and certain discovery responses that are not particularly germane to the issue before us in this appeal. In its Motion for Summary Judgment and in opposition to LIGA's Cross-Motion for Summary Judgment, Plaintiffs assert that coverage for the accident is provided by Section 2(d)(1) of the Motor Vehicle Liability Exclusions ("Section 2(d)(1)") contained in the Maison Policy, which provides in pertinent part:

**SECTION II - EXCLUSIONS**

**A. "Motor Vehicle Liability"**

**. . .**

> **2.** If Exclusion **A.1** does not apply, there is still no coverage for "motor vehicle liability" unless the "motor vehicle" is:

**. . .**

> **d.** Designed for recreational use off public roads and:
>
> **(1)** Not owned by and "insured"[.]

Plaintiffs submit that Section 2(d)(1) provides coverage for the exact set of facts surrounding the accident, *i.e.*, the golf cart was designated for recreational use off public roads, and it was not owned by the insured, Mrs. Bayhi.

LIGA counters that Section 2(d)(1) only narrows the scope of coverage, it does not *provide* coverage as argued by Plaintiffs. In denying coverage, LIGA relies on the Endorsement. Specifically, the Maison Policy contains a **SPECIAL PROVISIONS** section stating that **THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ CAREFULLY**, with the following pertinent section:

**Section II - LIABILITY COVERAGES**

**Section II - EXCLUSIONS**

**. . .**

The following **Exclusions** are added:

. . .

**11. Recreational Vehicles**

> "Bodily injury" or "property damage" because of or originating from:
>
> The use, supervision, care, custody or control of any "insured", or that of your "employee", agent, visitor or tenant, of a recreational off road or unlicensed vehicle, including but not limited to, ATV's, 3-wheelers, 4-wheelers, dune buggies, rock climbers, go-carts, minibikes, dirt bikes, snowmobiles, motorized skateboards, and motorized scooters:
>
> a. Whether owned or not owned by any "insured", and
>
> b. Whether or not the injury or damage occurs on the "insured location" or any other location.

In response to LIGA's argument, Plaintiffs argue that the Endorsement does not amend or delete Section 2(d)(1). Thus, when read as a whole, the policy contains conflicting language because Section 2(d)(1) confirms coverage and the Endorsement purports to exclude coverage for the same set of facts.

***Interpretation of Insurance Policies***

"Whether an insurance policy exclusion applies to exclude coverage in a particular case may present a mixed question of law and fact, which is subject to the manifest error standard of review." *Lombard v. Nobre*, 2023-0746, p. 19 (La. App. 4 Cir. 6/18/24), 398 So.3d 1, 25 (citing *Power v. State Farm Fire & Cas. Co.*, 2015-0796, p. 11 (La. App. 5 Cir. 5/26/16), 193 So.3d 471, 477).

The Court in *Lombard* also reiterated the legal principles courts must apply in analyzing insurance policies, as follows:

> • An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Civil Code. [Footnote omitted]

6

• The parties' intent as reflected by the words in the policy determine the extent of coverage. Such intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning. LSA-C.C. Art. 2047.

• An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion.

• Absent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume.

• [I]f the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. LSA-C.C. Art. 2046 (providing that when the words of a contract are clear, no further interpretation may be made to determine the parties' intent).

• When the language of an insurance policy is clear, courts lack the authority to change or alter its terms under the guise of interpretation. The determination of whether a contract is clear or ambiguous is a question of law.

*Lombard* at pp. 25-26, 398 So.3d at 19 (citing *Moon v. Safeway Ins. Co. of Louisiana*, 2022-0455, pp. 5-6 (La. App. 4 Cir. 12/6/22), 353 So.3d 352, 356).

"Although the insured bears the burden of proving a policy of insurance affords coverage for an incident, the insurer bears the burden of proving the applicability of an exclusionary clause within a policy." *Cosey v. Flight Academy of New Orleans, LLC,* 2019-0757, pp. 4-5 (La. App. 4 Cir. 5/13/20), 364 So.3d 226, 231 (citing *Jones v. Estate of Santiago*, 2003-1424, p. 12 (La. 4/14/04), 870 So.2d 1002, 1010). "The exclusionary provisions of an insurance contract are strictly construed against the insurer, and any ambiguity in the exclusion is construed in favor of the insured." *Calix v. Ideal Market # 6*, 2021-0555, pp. 6-7

(La. App. 5 Cir. 7/13/22), 396 So.3d 458, 464 (citing *Garcia v. St. Bernard Parish Sch. Bd.*, 576 So.2d 975 (La. 1991)).

As this Court held in *King v. Old Republic Ins. Co.*, 2016-0170, pp. 6-7 (La. App. 4 Cir. 9/7/16), 200 So.3d 989, 993-994:

> "An insurer, like other individuals, is entitled to limit its liability and to impose and enforce reasonable conditions upon the policy obligations it contractually assumes; it may change or amend the coverage provided by the policy by an endorsement attached to the policy as long as the provisions and/or endorsements do not conflict with statutory law or public policy." *Zeitoun v. Orleans Par. Sch. Bd.*, 2009–1130, p. 4 (La. App. 4 Cir. 3/3/10), 33 So.3d 361, 365 (citing *Louisiana Ins. Guar. Ass'n*, 93-0911 at p. 6, 630 So.2d at 763). "If an endorsement is attached to the policy and the policy and endorsements are parts of the same contract, the endorsement becomes part of the contract, and the two must be construed together." *Zeitoun*, 2009-1130 at p. 4, 33 So.3d at 365 (citing *Mattingly v. Sportsline*, Inc., 98-230, p. 7 (La. App. 5 Cir. 10/28/98), 720 So.2d 1227, 1230). "If a conflict between the endorsement and the policy exists, the endorsement prevails." *Zeitoun*, 2009-1130 at p. 4, 33 So.3d at 365 (*citing Chicago Property Interests, L.L.C. v. Broussard*, 2008-526, p. 10 (La. App. 5 Cir. 1/13/09), 8 So.3d 42, 49). "If coverage is provided in the policy, but then excluded in the endorsement to the policy, coverage will be excluded." *Id.*

Moreover, in *Eads v. Chartis Specialty Ins. Co.*, 2013-0224, p. 10 (La. App. 3 Cir. 2/26/14), 133 So.3d 722, 728 (quoting *Sims v. Guerrero*, 39,091, pp. 4-5 (La. App. 2 Cir. 12/15/04), 889 So.2d 1184, 1186), considering whether a policy endorsement creates an ambiguity, the Third Circuit Court further recognized:

> [I]f the exclusion found in the endorsement provides a narrower scope of coverage than the provisions in other sections of this policy, such differences do not necessarily create ambiguity. The extent of coverage is determined by the parties' intent as reflected by the words of the policy; the intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the policy's words, unless those words have acquired a technical meaning. *Ledbetter v. Concord General Corporation*, 95-0809 (La.01/06/96), 665 So.2d 1166. The very purpose of exclusions added through endorsements is to change what otherwise would be the meaning of the terms in the policy or the scope of the coverage. The use of such endorsements allows the parties to adjust a policy without having to confect an entire new policy in place of a "standard" policy.

As stated above, the Endorsement in the Maison Policy excludes coverage for:

> "Bodily injury" or "property damage" because of or originating from:
>
> The use, supervision, care, custody or control of any "insured", or that of your "employee", agent, visitor or tenant, of *a recreational off road or unlicensed vehicle,* including but not limited to, ATV's, 3-wheelers, 4-wheelers, dune buggies, rock climbers, go-carts, minibikes, dirt bikes, snowmobiles, motorized skateboards, and motorized scooters:  (Emphasis added).

It is undisputed that the golf cart in question was a recreational off-road vehicle *and* that it was an unlicensed vehicle.  In response to Requests For Admissions issued by UPC, Plaintiffs admitted that the golf cart was not registered with the Louisiana Department of Motor Vehicles.

The Maison Policy represents that "**THIS ENDORSEMENT CHANGES THE POLICY.**"  The Endorsement clearly provides for a narrower scope of coverage than Section 2(d)(1) and unambiguously excludes coverage for Plaintiffs' claims.  Moreover, even if the Endorsement was viewed to be in conflict with Section 2(d)(1), the prevailing jurisprudence provides that the Endorsement prevails.  Finally, we note that Plaintiffs do not assert that the Maison Policy language conflicts with statutory law or public policy.

After strictly construing the Endorsement, which narrows the insurer's obligation, we find that the Maison Policy did not provide coverage for the damages arising out of Mrs. Bayhi's use of an unlicensed golf cart.  Thus, we find no merit in Plaintiffs' first assignment of error that the trial court improperly applied the Endorsement to conclude that the Maison Policy does not provide coverage.

9

Likewise, we find no merit in Plaintiffs' remaining argument that the trial court erred in reasoning that the Endorsement contained in the UPC Policy was "nearly identical" to the Maison Policy Endorsement. We note that the trial court did reference the UPC Policy Endorsement in its Reasons for Judgment, stating that the "UPC insurance provision was nearly identical to the one in the Maison Policy." However, it is well-settled that appellate courts review judgments, not reasons for judgment.[3]

The excerpt from the UPC Policy that is contained in this record states as follows:

> **THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**
>
> **RECREATIONAL OR SERVICE VEHICLE EXCLUSION ENDORSEMENT**
>
> This insurance will not provide coverage or payments for indemnity or expense costs under any part of the policy for any occurrence arising wholly or in part out of or in connection with the following activities:
>
> Any ownership, maintenance, or use of any motor vehicle or other motorized land conveyance designed for recreational or service use off public roads or which is not subject to motor vehicle registration.
>
> **All other provisions and exclusions of this policy apply.**

While not necessarily identical, it is clear that the endorsements contained in the two policies have similar language. Regardless, after reviewing this matter *de novo* and applying the general principles of contract interpretation, we conclude that the Maison Policy unambiguously excludes coverage for Plaintiffs' claims.

---

[3] *3000-3032 St. Claude Avenue, LLC v. City of New Orleans*, 2022-0813, p 11 (La. App. 4 Cir. 6/22/23), 368, 1160, 1170, n. 2 (internal citations omitted). Nevertheless, appellate courts may review the trial court's reasons for judgment to gain insight into the trial court's judgment. *See Wooley v. Lucksinger,* 2009-0571, p. 77 (La. 4/1/11), 61 So.3d 507, 572.

**CONCLUSION**

For the foregoing reasons, we find no error on the part of the trial court in granting summary judgment in favor of LIGA. Accordingly, the October 10, 2024 Judgment is affirmed.

**AFFIRMED**